## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | | |
|---|---|---|
| RENE LORENTE GARCIA a/k/a RENE LORENTE, | : | Case No.: |
| | : | 1:24-cv-23066-CMA |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **DEMAND FOR JURY TRIAL** |
| CAROLINA GIRALDO NAVARRO a/k/a "KAROL G", TIJS MICHIEL VERWEST a/k/a "TIËSTO", TEEMU BRUNILA, JONAS DAVID KRÖPER, YOSHI BREEN, ATLANTIC RECORDS d/b/a ATLANTIC RECORDING CORPORATION, KOBALT MUSIC GROUP LIMITED d/b/a KOBALT SONGS MUSIC PUBLISHING, SONY MUSIC PUBLISHING d/b/a SONY/ATV TUNES LLC, WARNER BROS. RECORDS INC. | : : : : : : : : | |
| Defendants. | | |

### *SECOND* AMENDED COMPLAINT FOR *COPYRIGHT INFRINGEMENT*
("Algo Diferente" May 30, 2000 / "Don't be Shy" August 12, 2021)

### INTRODUCTION

1.      Plaintiff **Rene Lorente Garcia** (Hereinafter "*plaintiff*" and/or "*copyright owner*") brings this civil action pursuant to the *Copyright* laws of the United States, to seek damages and injunctive relief for *copyright infringement,* from defendants. (Hereinafter all defendants are referred to herein as "*defendants*" or "*infringers*").

2.      This case arises under the United States Copyright Laws, 17 U.S.C. §101 thereof, and this Honorable District Court has jurisdiction of the cause pursuant to 28 U.S.C. §1338(a). From the onset, the plaintiff is not required to show *infringing work,* and his *copyrighted work* are "identical"; to establish infringement he only has to show the existence of ***substantial similarities*** between defendants' infringing work "Don't be Shy" (hereinafter referred to as the "*infringing work*") and plaintiff's work "Algo Diferente" (hereinafter referred to as the "*copyrighted work*").

1

Plaintiff ascertains, he has sufficient proof, both direct and circumstantial, including *expert* testimony, to convince the Court and a Jury, to reach this conclusion, by way of comparison. Defendants had access to plaintiff's work, which had been in existence since **May 30, 2000**, and given *substantial similarities*, practically identical music note arrangement, a presumption should be made that one copied from the other, and defendants' access can be legitimately presumed or inferred. *Expert analysis* of musical arrangement fragment of the copyrighted and infringing works, show *exact rhythm*, *note arrangement*, *same intervals*, *harmony*, with only change being limited perhaps to the pitch, within 8 musical bars, *repeated* throughout infringing work. However, for a lay listener and a Jury, this combination of musical notes sounds practically *identical*.

3.       Plaintiff should be entitled to recover *damages* arising from infringement of ***his copyrighted musical composition*** from all defendants and enjoin defendants' future infringement. Specifically, lifetime of economic earnings, compensation, and *royalties*, as result of defendants' *willful* violation of plaintiff's *exclusive* copyright. Including violation by defendants, of plaintiff's right to the *exclusive use* of the copyrighted work "Algo Diferente", and *unauthorized* derivative works. It was the sole exclusive right of plaintiff to perform and authorize the use of *his* intellectual property.

## JURISDICTION

4.       This Honorable Court has original jurisdiction over Plaintiff's federal claims set forth in this Complaint pursuant to 28 U.S.C. §1331 (federal question), and subject matter jurisdiction pursuant to Copyright laws of the United States, 17 U.S.C. §101 et seq., and 28 U.S. C. §1338(a) (copyright).

5.       This Honorable Court has supplemental jurisdiction over plaintiff's state law claims arising under the laws of the state of Florida, pursuant to 28 U.S.C. §1367(a) because these claims are so related to plaintiff's claims under Federal Law, that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      This Court has personal jurisdiction over defendants because they solicited, transacted, and do business *within* the state of Florida, and have committed and continue to commit unlawful and tortuous acts both within and outside the state of Florida, causing injury in the state of Florida as well as throughout the United States and Puerto Rico. Plaintiff's claims arise out of conduct that gives rise to personal jurisdiction over defendants, based in copyright/federal law.

*Venue*

7.      Venue is proper in this District Court pursuant to 28 U.S.C. §1391(b) and 1400(a).

8.      The acts of copyright infringement complained herein were committed in multiple jurisdictions within the United States, *including* the state of Florida.

9.      In this case, despite existence of diversity of citizenship, not all defendants reside in the same State, therefore 28 U.S.C. §1391(a)(1) is inapplicable. However, pursuant to 28 U.S.C. §1391(a)(2) plaintiff may bring this civil action in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred… or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced. Further, pursuant to 28 U.S.C. §1391(b)(2), in a civil action not founded solely on diversity of citizenship, (here federal question/copyright) such as this, plaintiff may file this civil action in judicial district in which *substantial part* of the events or omissions giving rise to the claim occurred. For purposes of venue, defendants' corporations shall be deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. §1391(c). Finally, based on information and belief, several defendants are foreign nationals, pursuant to 28 U.S.C. §1391(d) an alien may be sued in *any* district. Based on information and belief codefendant *Tijs Michiel Verwest aka Tiësto* is a citizen of the Kingdom of the Netherlands and codefendant *Carolina Giraldo Navarro aka Karol G* is a citizen of Colombia.

10.     Further, the venue is proper because defendants have significant contacts with the state of Florida. Based on information and belief, a substantial part of the events giving rise to the claims took place in this judicial district. While most defendants are nonresidents of the state of

Florida, most if not all, however, have *minimum contacts*. When pinpointing the place where a claim arose, the United States Supreme Court in *Leroy v. Great Western United Corp.*, 443 US 173, 99 S.Ct. 2710 (1979) highlights that there may be several districts that qualify as a situs of "substantial" activities. However, if the selected district's contacts are "substantial", it should make no difference that another's more so, or the most so. Based on information and belief, the defendants have engaged in substantial, and not isolated, *commercial activities* in the state of Florida.

11.     Based on information and belief, defendants in this case have engaged in copyright infringement on multiple occasions *within* the United States, including without limitation, the jurisdictions of the Commonwealth of Puerto Rico as well as of the state of Florida, by engaging in economic activities in this forum, thru concert events for profit. The first of these events took place on November 27, 2021, when codefendant Karol G performed the infringing work "Don't' be Shy" live before an estimated audience of 35,000 concert goers at the Coliseo de Puerto Rico José Miguel Agrelot (See Image). Subsequently codefendants, including Karol G, have performed additional concerts in the Commonwealth Puerto Rico, the most recent ones on March 11 and March 12, 2023, at Estadio Hiram Bithorn, in San Juan, Puerto Rico.



12.     **Based on information and belief, codefendant Karol G has performed the infringing work "Don't be Shy" in the state of Florida at least six times since 2021.**

13.     Based on information and belief, codefendant *Tiësto* has performed the infringing work "Don't be Shy" in the state of Florida at the Ultra Music Festival in Miami, Florida on March 25, 2023, and at the F1 Racetrack in Miami, Florida on May 7, 2023.

14.     Based on information and belief, codefendants have performed live in numerous concerts throughout the state of Florida, including codefendant Karol G (who performed in Florida at least 19 times since 2021), the most recent one on July 14, 2024 in Miami, Florida, and codefendant *Tiësto* (who performed live concerts for profit within the jurisdiction of the state of Florida at least 39 times since 2021), the most recent one on March 22, 2024 at Ultra Music Festival in Miami, Florida.

15.     Based on information and belief, codefendant *Tiësto* owns the domain name for the website, www.Tiesto.com which promotes and sells the Testdrive Album and the "Don't be Shy" Album directed to customers in the United States, including the state of Florida.

16.     Based on information and belief, codefendant Karol G owns and manages several business entities in the state of Florida including without limitation, the following: Bichota LLC; Makinon LLC; Girlpower Publishing, LLC; TUSA LLC; Trece Music LLC; PineApple Music LLC; Ocean KG LLC; Concora Foundation, Inc., and Orca 10, LLC (which owns real property located in Aventura, Florida).

17.     Based on information and belief, codefendant Karol G owns and/or has a beneficial interest in real property in the state of Florida.

18.     Codefendant Karol G declared in a 2020 Miami-Dade County Circuit Court complaint that she is a resident of the state of Florida in the case: *Carolina Giraldo Navarro p/k/a/ Karol G v. Pro Talent Agency, LLC*, case no. 2020-019367-CA-01. Said case involved a contract executed by Karol G in the state of Florida and her ongoing business activities in the state of Florida, notably taking place during the same year (based on information and belief) that the Defendants were originally working and collaborating on the infringing work.

19.    The defendants have engaged in substantial and not isolated economic activity in this forum and have purposefully availed themselves of the privilege of conducting activities within Florida, including but not limited to by intentionally performing and selling their products and services (including the infringing work) in the state of Florida.

20.    Based on defendants' minimum contacts and connections with this forum, which include *conducting substantial business* within the state of Florida and engaging in copyright infringement involving the infringing work in the state of Florida, this Honorable District Court can assert personal jurisdiction over defendants, consistent with the traditional notions of fair play and substantial justice, as well as the constitutional right of due process. See *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

## PARTIES

21.    Plaintiff *René Lorente Garcia aka Rene Lorente* is a citizen of the United States, of Cuban origin, born November 27, 1948, in Havana, Cuba. He is a well-known Cuban American musician and composer. He performs instrumental solos on the flute and has been recognized for having been a member of Orquesta Aragón. At 12 years old, he learned to play the 5-key wooden flute from master flutist Antonio Arcaño. In 1969, he joined La Orquesta America de Ninon Mondejar. In 1980, the Senen Suarez Combo. From his participation in great Cuban orchestras mention can be made of an LP with The America, another with Senen Suarez and five with the Orquesta Aragon. In 1990, he moved to the United States and after a short time created his own Charanga orchestra with which he remained until 1995 when he decided to change the course of his artistic career. Since then, he has acted as a soloist, where the flute sings and inspires at the same time. Lorente recorded his own discographic production: "Rene Lorente y su Charanga Cubana" (1992), "Madera y Metal" (2000), "Concepto en flauta" (2004). On July 2007, Lorente recorded "Algo Diferente" album by WEA Latina. For two years he belonged to the group of the "Café Nostalgia" in Miami. He participated in TV shows at: Univision, Telemundo, Mega TV, GemTV, Americateve, Telemiami, WLRN PBS, Wapa TV, RAI International of Italy. Lorente has

been involved in documentary works such as: " La charanga Eterna", homage to 70 Anniversary of Orquesta Aragon and "Aqui estamos" all stars homage to Cachao by Nat Chediak. News/Press about him: The New York Times, New Times, El Nuevo Herald, Latin Beat Magazine, Downbeat, Lawndale News, The San Juan Star, Revista Vea, Miami Exclusive, Revista Estrellas, Cubarte, Jazz Mestizo. He has participated in events such as: "Viva Chicago" Festival, Carnaval Miami calle 8, Jazz Festival "Sun of the Miles", Cubanostalgia Convention, Carnavales de Panama, S.O.B of Manhattan, Library of Congress Washington D.C. Lorente collaborated on studies of Ethnomusicology for the University of Florida and Western Michigan University. Throughout his artistic career plaintiff has performed in different European, Africa, Latin America, and United States stages where his *sui generis* interpretation of Cuban music has been recognized by specialized music critics.

22.     Defendant *Carolina Giraldo Navarro aka Karol G* is the singer/songwriter of the infringing work. Based on information and belief, codefendant's last known address is c/o Kobalt Songs Music Publishing, 2 Gansevoort Street, 6th. Floor, New York, NY 10014. Defendant *Carolina Giraldo Navarro aka "Karol G"* (Hereinafter "*Karol G*") is a Colombian singer, predominately known as a reggaeton and Latin trap singer. She moved from Colombia to New York City in 2014 to learn about the Latino music industry in the US. Since her early career she engaged in posting covers of songs on YouTube, in hopes of being discovered. Based on information and belief her last known address is c/o Songs of Kobalt Music Publishing, 220 West 42nd. Street, 11th. Floor, New York, NY 10036.

23.     Defendant *Tijs Michiel Verwest aka Tiësto* is producer/songwriter of the infringing work. Based on information and belief, Tiësto's last known address is c/o Kobalt Songs Music Publishing, 2 Gansevoort Street, 6th. Floor, New York, NY 10014. Defendant *Tijs Michiel Verwest aka "Tiësto"* (Hereinafter "*Tiësto*") is a Dutch DJ and music/record producer. In 1997, he founded the label Black Hole Recordings and he later performed live at the 2004 Summer Olympics

opening ceremony in Athens. Based on information and belief his last known address is c/o Kobalt Songs Music Publishing, 2 Gansevoort Street, 6th. Floor, New York, NY 10014.

24.     Defendant *Teemu Brunila* (Hereinafter "*Teemu*") is coproducer/songwriter of the infringing work. Based on information and belief, codefendant's last known address is c/o Sony/ATV Tunes LLC, 424 Church Street, Suite 1200, Nashville, TN 37219.

25.     Defendants *Jonas David Kröper* and *Yoshi Breen* (Hereinafter "*Kröper*" and "*Breen*" respectively) are songwriters of the infringing work. Based on information and belief, Kröper and Breen's last known address is c/o Sony/ATV Tunes LLC, 424 Church Street, Suite 1200, Nashville, TN 37219.

26.     Defendant *Atlantic Records* dba Atlantic Recording Corporation (Hereinafter "*Atlantic Records*") released the infringing work throughout various regions of the world, thru digital downloads and streaming on August 12, 2021. Based on information and belief, its last known address is DMCA Agent-Litigation Department, 1633 Broadway, New York, NY 10019.

27.     Defendant *Kobalt Music Group Limited dba Kobalt Songs Music Publishing* (Hereinafter "*Kobalt Music*"), released the infringing work throughout various regions of the world. Based on information and belief, its last known addresses are 220 West 42nd. Street, 11th Floor, New York, NY 10036 and 2 Gansevoort St., 6th. Floor, New York, NY 10014.

28.     Defendant *Sony Music Publishing dba Sony/ATV Tunes LLC* (Hereinafter "*Sony/ATV*") released the infringing work throughout various regions of the world, including Russia, thru contemporary hit radio format on August 25, 2021. Based on information and belief its address is 424 Church St., Suite 1200, Nashville, TN 37219.

29.     Defendant *Warner Bros. Records, Inc.* (Hereinafter "*Warner Bros*") released the infringing work in the United States and throughout various regions of the world, including Italy, thru contemporary hit radio format August 27, 2021. It is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of

California. Based on information and belief its last known address is 691 Waltham St. Mountain View, CA 94040-4577.

30.     Additional defendants may be called upon to respond for defendants' actions and will be identified during the discovery phase of the case, and promptly substituted in advance, prior to Trial for referenced case. Plaintiff reserves the right to further amend this Complaint, if necessary, to include other legal entities that could be held vicariously liable for defendants' actions.

31.     Defendants participated in and/or directed the unlawful violations alleged herein or knew of the violations and failed to act to prevent them.

32.     All defendants are jointly liable for the damages alleged herein.

## FACTUAL ALLEGATIONS

33.     The plaintiff *René Lorente Garcia* (Hereinafter "*plaintiff*") is a professional career-long composer and musician. His intellectual creativity has been influenced by his Cuban origin and he has become well known amongst the Cuban American community, and the Latin music industry, for his unique style of music, composing and for performing his own songs/melodies. He has distinguished himself as a musical composer and instrumental (flute) music performer.

34.     Amongst plaintiff's creations, and intellectual property, a musical work written and performed by him in 1998, titled "Algo Diferente" (something different), stands out. This unique song track was part of his Album "Madera y Metal" which was released on May 30, 2000.  Plaintiff registered his song on *May 30, 2000*, with the United States Copyright Office (**Exhibit A**). This is plaintiff's copyrighted musical composition.

35.     During the year 2000, the Plaintiff authored and published certain song/music under the name "Algo Diferente" also known as "Emociones" (alternate title). Part of his Album release titled "Madera y Metal". He is the *author* of instrumental music created by him, for which he applied and obtained a *Certificate of Registration* from the United States Copyright Office, with the effective registration date of *May 30, 2000*. See **Exhibit A**, #**PAu 2-496-298**. This song is from

9

his own original composition. His solo "Algo Diferente" was originally formally released by him on his Album "Madera y metal" in 2003, and later released again in 2007 in Album "Algo Diferente".  (See Images)

**CERTIFICATE OF REGISTRATION**

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

**REGISTER OF COPYRIGHTS**
*United States of America*

OFFICIAL SEAL

**FORM PA**
For a Work of the Performing Arts
UNITED STATES COPYRIGHT OFFICE

PAu 2-496-298

**EFFECTIVE DATE OF REGISTRATION**

3 0 MAY 2000

Month        Day        Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**  **TITLE OF THIS WORK ▼**
ALGO DIFERENTE

**PREVIOUS OR ALTERNATIVE TITLES ▼**
EMOCIONES (ALTERNATIVE TITLE)

**NATURE OF THIS WORK ▼** See instructions
AUTHORSHIP

**2** **a** **NAME OF AUTHOR ▼**
RENE LORENTE

**DATES OF BIRTH AND DEATH**
Year Born ▼ 1948    Year Died ▼ N/A

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of  U S A
      Domiciled in  MIAMI, Florida

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
INSTRUMENTAL MUSIC

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** **NAME OF AUTHOR ▼**
N/A

**DATES OF BIRTH AND DEATH**
Year Born ▼  Year Died ▼ N/A

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of
      Domiciled in   N/A

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK** N/A
Anonymous?   ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
N/A

**c** **NAME OF AUTHOR ▼**
N/A

**DATES OF BIRTH AND DEATH**
Year Born ▼  Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of   N/A
      Domiciled in

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3** **a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given ONLY if this work has been published.
1998

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Month ▶ N/A   Day ▶   Year ▶
◀ Nation

**4** **COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
RENE LORENTE
120 S 10 76 CT
MIAMI FL 33144

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
N/A

**APPLICATION RECEIVED**

**ONE DEPOSIT RECEIVED**

**TWO DEPOSITS RECEIVED**

**FUNDS RECEIVED**

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___2___ pages

**Exhibit A**, pag. 1

11

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
     Yes

FORM TA

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**5** PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is "no," go to space 7.
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☒ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**6** DERIVATIVE WORK OR COMPILATION  Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a  Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

N/A

b  Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

N/A

**7** DEPOSIT ACCOUNT  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
a  Name ▼                                    Account Number ▼

N/A

b  CORRESPONDENCE  Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/ZIP ▼

RENE LORENTE
120 SW 76 Ct
MIAMI, FL 33144

Area code and daytime telephone number ▶ (305) 267-3118          Fax number ▶ (     )

**8** CERTIFICATION*  I, the undersigned, hereby certify that I am the
Check only one ▶
☒ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of  RENE LORENTE
                        Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
RENE LORENTE                                    Date ▶ 5/24/2000

Handwritten signature (X) ▼
x  Rene Lorente

**9** Certificate will be mailed in window envelope to this address:

Name ▼
RENE LORENTE
Number/Street/Apt ▼
120 SW 76 Ct
City/State/ZIP ▼
MIAMI  FL  33144

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money
   order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆ PRINTED ON RECYCLED PAPER                                    ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/59

**Exhibit A**, pag. 2

36.     Pursuant to 1978 Copyright Act, as amended, and statute 17 U.S.C. §101 *et seq.*, plaintiff's *intellectual property*, specifically his copyrighted *musical work*, is a work of authorship. 17 U.S.C. §102, which constitutes an *expression* of *his* musical ideas and as copyright holder he is entitled under 17 U.S.C. §106 to the *exclusive use* of his copyrighted material, including reproduction in any manner; preparation of derivative works; transfer of ownership; and public performance or display. Evidence of registration is attached to his Complaint as **Exhibit A**. Pursuant to 17 U.S.C. §501(b), plaintiff has an exclusive right *to sue* for copyright infringement.

37.     At the time of plaintiff's registration of "Algo Diferente" with the Copyright Office on May 30, 2000, with registration no. **PAu 2-496-298**, codefendant infringer Karol G was only nine (9) years old, but codefendant composer/distributor Tiësto was thirty-one (31) years of age. Therefore, plaintiff was *already* an established and well-known music author, composer, and performer, when codefendant Karol G was barely known or had not yet begun her career.

38.     Plaintiff created his instrumental composition "Algo Diferente" with a unique set of musical note arrangement, an original product of his inspiration and intellectual creative work. Defendants, however, thru their *infringing work* misappropriated his beloved copyrighted work.

39.     Defendants will no doubt attempt to allege that supposedly the plaintiff must have copied his song/music/melody "Algo Diferente" from someone else, however, such allegation would be erroneous, false, and misleading. At the time plaintiff registered his copyright with the United States Copyright Office, on *May 30, 2000*, social media was non-existent. As a matter of fact, the popular YouTube website didn't even exist, as it was later launched on February 14, 2005. Assuming *arguendo* for sake of argument, that said allegation by defendants were true, defendants' good faith vanishes given that they failed to credit any previous author in their work, and attributed authorship of "Don't be Shy" exclusively to themselves. Thus, not giving the corresponding credit to any other alleged *previous* author or copyright holder.

40.     Defendants had ample access to plaintiff's intellectual property. On May 30, 2000, the Plaintiff registered his intellectual property, a song/melody titled "Algo Diferente" with the US Copyright Office. A catchy /melody that would make its way into *several albums*:

(a)     "Reencuentro" Santa fe Records (CD1002) 2000
(b) "Enrique Chia presenta a René Lorente y su flauta cubana" Begui Records (BRCD2151) 2001
(c) "Madera y Metal" Hamelin Records (HR2702) 2003
(d) "Algo Diferente" Mojito Records (601132) 2007

Further, the Album "Algo Diferente" by Mojito Records (601132) 2007, was distributed *online* thru various digital services, including Spotify, Apple Music, Amazon music, Ebay, Allmusic, CD Universe, Online Radio Box, Last.fm, Saavn, Songlyrics, and YouTube. Videos have also been published on YouTube since 2007, readily accessible to all defendants. Plaintiff had released his song as part of his album "Algo Diferente" on July 31, 2007, which was later released thru digital service providers such as YouTube on March 31, 2015, and additionally made available on Spotify, Amazon Music, Apple Music, and other online music streaming platforms and/or services. Since 2007. Plaintiff's video performing on flute "Algo Diferente" has been on YouTube since *2007*.

41.     On April 8, 2008, plaintiff Rene Lorente was featured in the internationally popular Spanish television program "Noches de Estrella", where he performed the referenced song "Algo Diferente" publicly. Said program was featured in the YouTube channel "spicandproud" which has over 1,417 views. Rene Lorente featured this copyrighted song on "Rene Lorente" YouTube Channel (@renelorente) which has over 3,690 subscribers and was created on Jan. 24, 2010. Rene uploaded his performance video of "Algo Diferente" on July 4, 2012.

42.     The infringing work "Don't be Shy" is a song supposedly composed by Dutch DJ Tiësto and Colombian singer-songwriter Carolina Giraldo *aka* as "Karol G". Both codefendants in this case. It was released on *August 12, 2021,* by Atlantic Records, as the second single from Tiësto seventh studio album Drive. It was Karol G's *first* song in English, and crossover into the USA market.

43.     "Don't be Shy" has been featured on Tiësto's YouTube Channel, which has had over *392 million* Views, since its release two (2) years ago. Tiësto's Channel has over 6.58 million subscribers. A simple review of this infringing song demonstrates that both the singer-songwriter and the producer, including their respective affiliated companies, codefendants as well, *colluded* to create and distribute an *unauthorized* reproduction of plaintiff's copyrighted song for profit and commercial use, by utilizing an identical or *substantially similar* melody and musical arrangement of the music notes which comprise plaintiff's song, without having obtained authorization to do so or a license, from the plaintiff.

44.     On *June 16, 2022*, defendants were put on *notice* of *copyright infringement* by way of correspondence. See **Exhibit B** Defendants, however, *willfully* continued to infringe plaintiff's rights. Despite plaintiff's *good faith* efforts to ask defendants to stop their infringement, they unfairly *persisted,* forcing the plaintiff to seek this Court's intervention, to stop defendants' unlawful infringement.

45.     On August 12, 2023, defendants celebrated the two-year (2) anniversary of the public world-wide launch of the infringing work, "Don't be Shy" a copyright infringement of plaintiff's original work "Algo Diferente". The release of "Don't be Shy" resulted in plaintiff's substantial *economic loss* and mental anguish, as he watched defendants *falsely* take credit for supposedly composing/producing his beloved musical arrangement/composition. Since worldwide release of "Don't be Shy" by codefendants "Karol G" and "Tiësto", internationally known artists, the song has been performed, uploaded, downloaded, saved, and shared at least 392 *million* times, while infringers *profited* from the reproduction, distribution and sale the infringing musical arrangement/composition thru physical and digital media, including ringtones, songs, and videos, etc. At no time, however, was the plaintiff ever given any kind of credit for his copyright, nor given any kind of royalties. For the plaintiff, the *ongoing* unauthorized use of his copyrighted work and unauthorize derivate work, have forced him to sue defendants for copyright infringement, and has the right to collect royalties.

46.     All defendants participated in the *willful* infringement of plaintiff's intellectual property. Plaintiff owns a valid copyright registration, and defendants appear to have collaborated in the unauthorized alteration and/or reproduction for commercial use, of *constituent elements* of plaintiff's copyrighted song "Algo Diferente". In violation of US Copyright Act, 17 U.S.C. §101. Defendants appropriated, altered, reproduced, sold, distributed, and performed *in public*, the refenced copyrighted work.

47.     Technological advances made it increasingly possible for defendants to reproduce, sell and distribute worldwide to the public, the infringing work. Specifically, through the Internet. Defendants present operation represents the result of collusion by defendants to engage in large scale unauthorized use of copyrighted work, including its unauthorized derivative work. Defendants collectively colluded to facilitate the reproduction and distribution of unauthorized copyrighted material. Defendants' infringing work was and is falsely reproduced and distributed with defendants' trademark/tradename, a fictitious and/or unlawful copyright notice, and warning that unauthorized copying is illegal. Yet defendants failed to list or identify plaintiff in its infringing derivative work, as the original copyright owner. Based on information and belief, defendants continue colluding to engage in their infringing activities, even after they were put *on notice* on June 16, 2022. A true and complete copy of the *notices* sent to defendants, are attached hereto as **Exhibit B**.

48.     In preparation for this litigation, plaintiff sought *expert testimony* on the question of infringement, and economic damages, and he will be able to point out for this Honorable Court and a Jury, the *overwhelming similarities* between defendants' infringing work and his copyrighted work. A simple test of infringement on the lay person who hears both works, will highlight similarities between the works, and a Jury's perception and understating as the trier of fact, is sufficient to show infringement took place.  (Refer to **Exhibit C**, Plaintiff's Expert Witness Report, attached and adopted herein, by reference. (See Final Conclusion, Sec. XXII, pag. 92, Exhibit C).

49.     Below the Court will find some basic explanation of the works' similarities. Further, specific details of the reference copyright violation, a detailed explanation of substantial similarities, plaintiff's estimated economic losses, and expert witness conclusion are *adopted by reference herein* as described in plaintiff's expert witness report, identified here as **Exhibit C**.



50.     In the above illustration, this Honorable Court will appreciate that in this case defendants engaged in *unauthorized* reproduction of plaintiff's copyrighted musical composition.

If not identical, they are *substantially similar*. In the infringing work, codefendant Karol G *also* engaged in *humming* and subsequent singing of a *multiple* bar of music (at least **eight (8)**) in total, from copyrighted work. However, humming, recording, distribution and performing *in public* is also a *derivative work*, a right exclusively reserved for the plaintiff, copyright owner.

51.     In order to analyze the musical works in question, we look at its component parts: (1) the rhythmic, (2) the harmonic, (3) the melodic, and (4) the expressive. Analyzing these two fragments of music, one can see great similarity between them and coincidences *unlikely*. There are various ways in which a musical idea can be originated by a composer and each unique, personal, and unrepeatable in its form and content. Any similarity in its entirety, is plagiarism.

52.     Starting with the rhythmic of the first 8 bars, they are the same rhythmic pattern in the two themes. There is no element that leads to think of any small variation or difference between them. The location of the rhythmic figures within the staff and the metric duration of each of the figures is exactly *the same*, (original and copy).

53.     In this case it is a cyclic pattern of 5 figures in this order: Black, black, white, black with point, and quaver, that is repeated several times.



54.     In musical notation, a *bar* is a segment of music bounded by vertical lines, which is known as *bar lines*, which indicate one or more recurring beats. Harmony compared to rhythm and melody is the most manufactured of these three musical elements. At the harmonic level, if we analyze the harmonic cycle or harmonic progression of these 8 bars, it is remarkable the progression of chords by intervals of just quarters. In this particular case, we see the same harmonic cycle including the major and minor modality of its chords, in different pitch or tonal center, used

in both themes. On the melodic, a musical theme or idea, is nothing more than a succession of notes called melody, which will show us the nature of it. Just by changing the dynamics of execution you can make the emotion of the same succession of notes change. The melody or succession of notes remains in its original state without suffering significant alterations and is used for another musical theme under another title. We are in the presence of a copy or plagiarism of a previously written material.

55.    Here we find two different themes that within their formal structure or parts that divide a song, eg: (A-B-Chorus, etc.) have the *same melody of 8 bars*, in this case, in the Chorus of the song.

### A: Algo Diferente



### B: Don't be shy









56. Without plaintiff's consent, defendants publicly and falsely took credit for supposedly composing, authoring, performing and/or distributing, a song titled "*Don't be Shy*" which is a violation of plaintiff's copyright. It doesn't take an expert or musician, to carefully listen to the melody/sounds of each, to recognized that one was copied from the other. In this case, defendants' "Don't be Shy" is a blatant violation of plaintiff's copyrighted "Algo Diferente". Even assuming they are not considered identical, one cannot pass unnoticed their *substantial* similarity. The sounds, breaks/intervals and melody of both the written and heard music, when compared are *substantially similar*.

<u>Substantial Similarity</u>

57.     Under a test of *substantial similarity*, the Honorable District Court can determine whether defendants committed copyright infringement. In this case, at least eight (8) music bars, which are *repeated multiple times*, *throughout* the infringing song, including also *initial humming* by singer-defendant Karol G, are substantial and significant, significantly similar to the copyright.

58.     The initial copyrighted material has unique elements of musical arrangement and composition, elements which are similarly found in the infringing work. The musical arrangement follows the exact same order, including spaces or intervals, with minimal variation of the pitch. When the Court and a Jury listen to compare both works, the infringing work so closely resembles the original copyrighted work, that there is a strong likelihood that it was copied by defendants.

59.     To uphold a claim of infringement under the Copyright Act, a court must find the defendant copied elements of the plaintiff 's work that are themselves original. *Feist Publications, Inc. v. Rural Telephone Service Co*., 499 U. S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). As part of this process, a court must isolate and vindicate only the truly original elements of a copyrighted work. Nimmer on Copyright §8.01[D] (2022). The plaintiff must usually show not only a similarity but a "substantial" similarity between the allegedly infringing work and the original elements of his own copyrighted work. Nimmer on Copyright §13.03[A] (2023). See *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1291

### CAUSES OF ACTIONS

### <u>COUNT I: COPYRIGHT INFRINGEMENT</u>

<u>Plaintiff *Rene Lorente* owns a federally registered copyright of his creative work</u>

60.     The plaintiff, *Rene Lorente*, is, and at all relevant times has been, the copyright owner or licensee of exclusive rights under United States copyright with respect to his song "Algo Diferente" (the "Copyrighted Musical Composition"). The *copyrighted musical composition* includes but are not limited to the copyrighted instrumental composition identified in **Exhibit A** attached hereto, each of which is the subject of a valid Certificate of Copyright Registration issued

by the Registry of Copyrights. At all relevant times, the plaintiff has been the owner of the *copyrighted musical composition*, unlawfully reproduced and distributed by defendants, and plaintiff applied for and obtained a copyright registration certificate. See **Exhibit A**.

61.     Under 17 U.S.C. §102(a)(2) plaintiff's referenced musical work is subject to copyright protection, which also extends to derivate works (17 U.S.C. §103),  and under 17 U.S.C. §106 the plaintiff has *exclusive rights* of his copyrighted work, including the right to: (1) *reproduce* copyrighted work in copies; (2) prepared *derivative works* based upon his copyrighted work; (3) *distribute copies* of his copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) to *perform* copyrighted work publicly; (5) display his copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of digital audio transmission. Plaintiff has the *exclusive right* as the copyright holder *to do* and *to authorize* any of the activities specified and enumerated by the law.

62.     Defendants engaged in *willful* violation of 17 U.S.C. §106(2) because their exploitation of the *infringing work, "*Don't be Shy*,* incorporated a portion of the *copyrighted work, "*Algo Diferente*"*. The infringing work was distributed through information storage and retrieval systems, digital transmission and public performance, through public distribution *for profit*, by defendants. Said unlawful distribution of the infringing work, constitutes infringement of plaintiff's copyrighted work. Based on information and belief, the infringing work has been unlawfully reproduced and/or performed by defendants, and made available by transmission to the public at large, at least *three hundred and ninety-two million times (392,000,000)*.

63.     In the present case, plaintiff can demonstrate with preponderance of the evidence, based on direct and/or circumstantial evidence, that defendants **Carolina Giraldo Navarro aka Karol G, Tijs Michiel Verwest aka Tiësto, Teemu Brunila, Jonas David Kröper** and **Yoshi Breen** colluded to engaged in *unauthorized* use, alteration, reproduction, distribution, and/or sale of his original copyrighted work, without plaintiff's permission. Plaintiff is the owner of a valid copyright (See **Exhibit A**) and defendants copied his original copyrighted composition, if not

identical, substantially similar (over 90%). In *Skidmore v. Led Zepppelin*, 1064 (9th. Cir. 2020) (en banc) a case involving the alleged copyright infringement of a musical composition, the Ninth Circuit worded the elements slightly differently: "proof of copyright infringement requires [the plaintiff] to show: (1) that he owns a valid copyright in [the work]; and (2) that [the defendant] copied protected aspects of the work… The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'" (citing *Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1117 (9th. Cir. 2018)). To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. See *Feist Publications v. Rural Telephone Service Co.,* 499 U.S. 340 (1991); see also *Seven Arts Filmed Entm't Ltd. V. Content Media Corp*., 733 F.3d 1251, 1254 (9th. Cir. 2013; *Great Minds v. Office Depot*, 945 F.3d 1106, 1110 (9th Cir. 2019)

64.     The similarities between plaintiff's copyrighted work "Algo Diferente" melody and arrangement of musical notes, is so extensive and strikingly similar, that without more, justifies an inference of copying, prove improper appropriation, and precludes the possibility of independent creation by defendants. See *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (C.A. 2(N.Y.).1998) In the present case, the plaintiff owns a valid copyright registration and defendants appear to have collaborated and/or participated in the unauthorized reproduction of constituent elements of plaintiff's copyrighted song. See *Feist Publications, Inc. v. Rural Telephone Service Co., Inc*., 499 U.S. 340, 111 (1991). See Plaintiff's Expert Witness Report, Sec. XXII, pag. 92, **Exhibit C**.

65.     Pursuant to 17 U.S.C. §501 and related statutes, plaintiff, as legal owner of an exclusive copyright, has the right to institute this civil action in this Honorable Federal District Court. Without authorization, defendants reproduced, sold and/or distributed plaintiff's copyrighted material. U.S. Copyright Registration Number **PAu 2-496-298**. At no time, did plaintiff authorize defendants to reproduce, alter, sell and/or distribute derivative work of his intellectual property.

<u>Defendants *willfully* infringed Plaintiff's registered Copyright</u>

66.     As of *June 16, 2022*, defendants were put on notice with respect to the infringing work, and that they did not have permission to exploit plaintiff's copyrighted work. Defendants knew that their acts and any continued wrongful conduct constituted copyright infringement, and as a result such intentional conduct by infringer-defendants' is also deemed *willful* within the meaning of the Copyright Act. Defendants have refused to acknowledge that plaintiff is the copyright holder and is entitled to collect royalties from their infringing activities.

67.     As result of their wrongful conduct, defendants are liable to plaintiff for copyright infringement pursuant to 17 U.S.C. §501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his professional reputation and goodwill.

68.     Plaintiff is entitled to recover *damages*, which include its loses and any and all *profits* defendants have made as result of its wrongful conduct. 17 U.S.C. §504.

69.     In addition, because defendants' infringement was *willful*. Plaintiff is also entitled to recover his attorneys' fees and costs of this lawsuit pursuant to 17 U.S.C. §505. Among the exclusive rights granted to the plaintiff under the Copyright Act are the exclusive rights to reproduce Copyrighted Recordings and distribute the Copyrighted Recordings to the public.

70.     Defendants have used online media distribution systems to reproduce, distribute and download plaintiff Copyrighted Recordings, to the public and/or to make the Copyrighted Recordings available for distribution to others. In doing so, defendants have violated plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute infringement of plaintiff's copyright and exclusive rights under copyright. Unauthorized Copyrighted Recordings were unlawfully made widely available, worldwide by defendants, in violation of plaintiff's rights.

71.     Defendants were put on proper notice of copyright pursuant to 17 U.S.C. § 401.

72.     Plaintiff is informed and believes that the foregoing acts of infringement have been *willful* and *intentional*, in disregards of and with *indifference* to plaintiff's rights.

73.    Defendants, subsequently to plaintiff having published the copyrighted work, engaged in the extensive unlawful alteration of, the sale and distribution of his copyrighted work, worldwide without express consent of the plaintiff, and/or a license to publish same upon payment of substantial royalties.

74.    Prior to acts of infringement complained of herein, defendants, their agents, representatives and/or employees had access to the plaintiff's copyrighted work. Subsequently, defendants placed a song on the market titled "Don't Be Shy" which is a direct infringement of plaintiff's copyrighted work. In order to mislead the general public as to the origin of the aforesaid music, defendants willful and maliciously placed thereon a false notice of copyright, and defendants made substantial profits by reason of the infringement of plaintiff's copyrighted work. By reason of the infringement of plaintiff's copyrighted work, plaintiff has also sustained damage to his reputation, while being primarily deprived of public credit for his work, and his fair share of royalties, that he would otherwise be entitled by virtue of his copyright, had defendants previously had obtained a license to engage in the alteration, reproduction, and distribution of his copyrighted recording/songs/music. Despite defendants being placed on notice, through correspondence to that effect, dated *June 16, 2022*, of their infringement of plaintiff's copyright, *willfully* and maliciously, they have *continued* to infringe the same, in disregard for plaintiff's rights. See *Notice*, **Exhibit B**.

75.    As a result of defendants' infringement of plaintiff's copyright and exclusive rights under copyright law, the plaintiff is entitled to *actual damages* pursuant to 17 U.S.C. §504 for Defendants' infringement of each the Copyrighted Musical Composition. Plaintiff is further entitled to his attorneys' fees and costs pursuant to 17 U.S.C. § 505.

76.    The unlawful conduct of Defendants is causing and, unless enjoined and restrained by this Honorable District Court, will continue to cause plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no other adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503, plaintiff is entitled to injunctive relief prohibiting

Defendants from further infringing plaintiff's copyrights, and ordering Defendants to destroy all copies of sound recordings made in violation of plaintiff's exclusive rights.

77.    Plaintiff respectfully asks the Court to enjoin all defendants, including their agents, representatives, and/or employees, during the pendency of this action, and permanently, from infringing said copyright of the plaintiff, in any manner. Plaintiff also asks that defendants be required to pay to plaintiff such damages as plaintiff has sustained in consequence of defendants' infringement of his copyright, and to account and pay over to the plaintiff all the gains, profits, and advantages derived by defendants from infringement of plaintiff's copyright, or such damages as the Court shall appear proper within the provisions of the copyright statutes, but not less than **$46,502,578.80.** See Plaintiff's Expert Witness Report, Sec. XXI, Total Estimated Damages, pag. 91, **Exhibit C**.

78.    Here is an excerpt from plaintiff's expert witness report, with his final conclusion:

"**XXIII. FINAL CONCLUSION**

In summary, in this Expert Report, I have conducted a comprehensive investigation into matters related to the violation of the Copyright Holder and Plagiarism concerning the original song composed in the year 1998 and titled: "Algo Diferente" by composer René Lorente, and the plagiarism titled: "Don't Be Shy" by composers Tijs Michiel Verwest, Carolina Giraldo Navarro, Yoshi L H Breen, Teemu William Brunila, and Jonas David Kroper, performed and globally popularized by artists Tiësto and Karol G.

Through a **detailed analysis of the musical, lyrical, and structural elements of both songs, it has been determined that there are undeniable significant similarities that go beyond the boundaries of common influence or casual coincidence.** In the realm of the arts, "coincidences" are highly improbable.

Hence, **any resemblance stemming entirely is merely plagiarism, a copy, a theft, an encroachment upon the rights of the Copyright Holder, or a violation of copyright.** These **resemblances encompass distinctive melodic elements, harmonic progressions, and lyrical structures that certify a direct relationship** between both compositions.

From an expert perspective, I have thoroughly examined the scope of copyright and the laws governing intellectual property

protection. **Through this evaluation, I have found that the creative and unique elements of "Algo Diferente" have been substantially incorporated into "Don't Be Shy," thereby giving rise to a copyright infringement and plagiarism of the song and composition.**

The assessment of damages has taken into account factors such as potential impact on the reputation and careers of the involved artists and composers, as well as the loss of income and moral damages associated with copyright infringement and plagiarism, extensive proliferation of plagiarism, and ongoing plagiarism.

Furthermore, regarding the fraudulent obtaining of the ASCAP award granted to Teemu William Brunila for the song "Don't Be Shy," it could be fraudulent since the implicated song has been identified as a plagiarism of the song "Algo Diferente."

In conclusion, based on the detailed analysis of the allegations and findings presented, **I conclude that substantial evidence supports the claims of copyright infringement and plagiarism, unauthorized use, mutilation of the work, and moral and monetary damages** in relation to the songs "Algo Diferente" and the plagiarized song "Don't Be Shy."

(Emphasis) See **Exhibit C**, pag. 92-93)

### COUNT II: CONTRIBUTORY INFRINGEMENT/VICARIOUS INFRINGEMENT

79.    Defendants ***Atlantic Records dba Atlantic Recording Corporation, Kobalt Music Group Limited dba Kobalt Songs Music Publishing, Sony Music Publishing dba Sony/ATV Tunes LLC,*** *and* ***Warner Bros. Records, Inc.*** induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing, and assisting others to reproduce and distribute the infringing work, "*Don't be Shy*". The defendants had knowledge of that said infringing work constituted copyright infringement of plaintiff's copyrighted work as well as knowledge of the infringing acts related to plaintiff's copyrighted work, including without limitation by receipt of plaintiff's notice to defendants (Exhibit B), and therefore the acts and conduct of the defendants, as alleged, also constitute *contributory* copyright infringement.

80.    Defendants' acts to upload to various websites and/or posting online of copyrighted material, including use of the internet for public music/video viewing, while encouraging of others to view, share, download, and/or copy copyrighted material, constitutes active encouragement of

infringement, therefore *contributory* infringement. Plaintiff also asks for an *Injunction* against all defendants, to stop them from posting material they knew or had reason to know contained material infringing the plaintiff's copyright.

81.     Defendants **Atlantic Records dba Atlantic Recording Corporation, Kobalt Music Group Limited dba Kobalt Songs Music Publishing, Sony Music Publishing dba Sony/ATV Tunes LLC,** *and* **Warner Bros. Records, Inc.** have the authority and ability to control de infringing acts of the individuals and/or legal entities who directly infringed plaintiff's copyrighted work, "*Algo Diferente*". As result, defendants obtained a direct financial benefit from the infringing activities of these individuals and/or legal entities who directly infringed plaintiff's copyrighted work. Therefore, the acts and/or conduct of defendants, as alleged, constitute *vicarious* copyright infringement.

## COUNT III: UNFAIR ENRICHMENT/DEFAMATION

82.     Defendants **Carolina Giraldo Navarro aka Karol G, Tijs Michiel Verwest aka Tiësto, Teemu Brunila, Jonas David Kröper** and **Yoshi Breen** publicly made false representation in the media, unjustifiably taking the credit for supposedly having written/authored the infringing work, "*Don't be Shy*", which include the copyrighted work, "*Algo Diferente*" and/or its derivative work from the original instrumental version, and in doing so, falsely taking the credit away from the musical composer plaintiff, the rightful owner of the copyright.

83.     Defendants acted deliberately to injure plaintiff and otherwise in conscious disregards of plaintiff's rights. Defendants' conduct as alleged has damaged and will continue to damage plaintiff's reputation and has resulted in losses to plaintiff and illicit gain of profit to defendants, in an amount in excess of **$46,502,578.80**. Defendants misappropriated and falsely publicly claimed authorship of derivative works of plaintiff's copyrighted material.

84.     Plaintiff was distraught since the first/launch of defendants "*Don't be Shy*" as his copyrighted property was altered by infringers to include *profanity* by defendants. Defendants

modified plaintiff's copyright, originally from instrumental music genre to pop and/or reggaeton, to include spoken language, including words like "Fuck'em" considered by many as *vulgar*.

85.     Defendants **Carolina Giraldo Navarro aka Karol G, Tijs Michiel Verwest aka Tiësto, Teemu Brunila, Jonas David Kröper** and **Yoshi Breen** have misrepresented publicly thru fraud that they are copyright holders and authors of the infringing work, "*Don't be Shy*", violating plaintiff's copyright. Said acts constitute misrepresentation because they were all made expressly aware on June 16, 2022 of their copyright infringement. Today, their liability surpasses negligence, as defendants had knowledge, becoming *willful*, having known since June 16, 2022 that their representations were false.

86.     Defendants **Carolina Giraldo Navarro aka Karol G, Tijs Michiel Verwest aka Tiësto, Teemu Brunila, Jonas David Kröper** and **Yoshi Breen's** unauthorized use of plaintiff's intellectual property and violation of his copyright have caused plaintiff severe mental anguish and emotional distress, as he had to both watch and listen as defendants publicly took world-wide credit for performing a practically identical, if not substantially similar song/music/melody to his beloved "*Algo Diferente*".

87.     Defendants **Atlantic Records dba Atlantic Recording Corporation, Kobalt Music Group Limited dba Kobalt Songs Music Publishing, Sony Music Publishing dba Sony/ATV Tunes LLC,** and **Warner Bros. Records, Inc.** should *also* be called to respond under the *doctrine of unjust enrichment* in light of the absence of a contractual relationship. Said defendants knowingly received a benefit as a result of the infringement of plaintiff's copyright work, "*Algo Diferente*", with no legal justification nor right to do so.

88.     Further, plaintiff can show defendants engaged in *defamation* when defendants: (1) made false statements purporting to be fact about authorship of the infringing work; (2) said publication or communication was made publicly to third parties; (3) fault amounted to negligence initially, later intentional after June 16, 2022; and (4) plaintiff has suffered economic losses and

harm to his reputation when defendants misappropriated his copyrighted material to produce substantially similar and/or unauthorized derivative work.

89.     The aforementioned acts of defendants were willful, fraudulent, and malicious, and therefore, defendants' conduct justifies an award of exemplary or punitive damages in an amount sufficient to punish defendants and to make examples of them to others, as provided by the law.

**COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

90.     Defendants **Carolina Giraldo Navarro aka Karol G, Tijs Michiel Verwest aka Tiësto, Teemu Brunila, Jonas David Kröper** and **Yoshi Breen** intentionally inflicted *serious emotional distress* on the plaintiff by engaging in the alteration of the copyrighted work, "*Algo Diferente*", to create a derivative work from original instrumental version, to include vulgar profanity such as the words "Fuck'em" in the infringing work, as sung by codefendant Carolina Giraldo aka *Karol G*. Plaintiff was emotionally distressed and afflicted by impotence to correct this wrongdoing.

91.     Defendants **Atlantic Records dba Atlantic Recording Corporation, Kobalt Music Group Limited dba Kobalt Songs Music Publishing, Sony Music Publishing dba Sony/ATV Tunes LLC,** and **Warner Bros. Records, Inc.** intentionally inflicted *serious emotional distress* on the plaintiff thru the unauthorized reproduction, alteration, sale, and distribution of unauthorized derivate work of his copyrighted material. Plaintiff has suffered mental anguish as result of the infringing acts, and damages to his reputation, as result of defendants publicly taking credit for his work, and he should be awarded money damages.

92.     Defendants' conduct, as alleged herein, makes them liable under Florida state law. Defendant's actions and omissions, in violation of Federal Law and Florida Laws were *tortious* and caused Plaintiff severe mental distress, anguish, humiliation, and shame, which should be compensated. Defendants' conduct and omissions are the proximate cause of all damages complained of herein. Plaintiff also asks that defendants be required to pay to plaintiff the amount of $**3,000,000.00** for his mental distress, anguish, humiliation, and shame.

93.     Pursuant to section 768.72(2), Florida statutes, this Honorable Court may find that defendants' actions were in *willful* violation of plaintiff's copyright property right, that they had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the copyright owner would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage to the copyright owner, and he may be entitled to an additional compensation equal to the above referenced amount, as *punitive damages*.

Monetary Damages Award Computation

a.   *Actual Damages* (Compensatory Damages) under Federal Law 17 U.S.C. §504(b):

   i.   Estimated demonstrable economic loss of the plaintiff, as copyright owner, as result of defendants' infringing activities.

   ii.  This includes lost sales and lost licensing revenues directly attributable to the infringement.

b.   *Profits.* Plaintiff is entitled to any money the infringers earned as result of the infringement:

   i.   In the present case the infringers' profits should be awarded to the plaintiff, as they exceed the amount of profits lost (actual damages) by the plaintiff, as result of the infringement.

   ii.  In this case, the plaintiff can present evidence of willful infringement, as defendants were put on notice of the infringement on June 16, 2022.

c.   Statutory Damages. Plaintiff *may* be entitled to specific monetary damages set by the Copyright Act, because he has a registered copyright. At *plaintiff's option*, he may opt for either actual damages and infringers' profits or statutory damages. In this case, the plaintiff is asking this Honorable Court for *actual damages* and additional *profits* as provided by subsection (b) of 17 USC §504(b).

d.   Including both Federal Claims and State Claim, plaintiff asks for **$52,502,578.80.**

94.     Below the Court will find an excerpt of Plaintiff's Expert Witness report, supporting his claim for damages and profits. See **Exhibit C**, Sec. XXI *Total Damages*, at pag. 91.

```
XXI. TOTAL DAMAGES AND HARM, COPYRIGHT VIOLATION, PLAGIARISM,
MORAL AND MONETARY RIGHTS.
```

```
Actual Damages                              $ 2,000,000.00

Extent of Plagiarism                        $ 5,000,000.00

Massive Infringements                       $ 5,000,000.00

Monetary Rights                             $ 5,000,000.00

Moral Rights                                $ 5,000,000.00

Other Benefits                              $ 2,000,000.00

Copyright Royalties - Single "Don't Be Shy" $   560,000.00
Copyright Royalties - Drive "Don't Be Shy"  $   649,600.00

Copyright Royalties - Spotify "Don't Be Shy" $ 2,000,000.00

Copyright Royalties                         $ 2,000,000.00

Copyright Royalties Remixes                 $ 2,000,000.00

Artistic Royalties for Master               $ 4,000,000.00

Artistic Royalties for Master Remixes       $ 4,000,000.00

SoundExchange                               $ 2,000,000.00

Other Digital Platforms "Don't Be Shy"      $ 4,000,000.00
Vinyl, Apple Music, iTunes Store, Amazon,
Pandora, SoundCloud, Tidal, Deezer, Napster,
Amazon Music Official Music

Video I "Don't Be Shy"                      $ 1,178,927.47

Official Music Video II "Don't Be Shy"      $    87,666.18

Official Music Video –
Behind The Scenes "Don't Be Shy"            $    26,385.15

Attorney's Fees $

Sub-Total ( preliminary )                   $ 46,502,578.80
```

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable District Court declares that

Defendants' conduct was illegal and in violation of legal statutes herein identified, and that it grants

Plaintiff the following remedies:

A. That this Honorable Court issues a *Declaratory Judgment* declaring that Defendants' actions and/or omissions violate applicable law. Specifically, that this Court enter a judgment against defendants that they have: (1) willfully infringed plaintiff's rights in federally registered copyright under 17 U.S.C. §501, (2) willfully injured plaintiff's reputation by publicly taking credit for derivative work of the copywriter material, and infliction severe emotional distress on the copyright owner in doing so;

B. That this Honorable Court issues an Injunction providing:

"Defendants shall be and hereby are enjoined from directly or indirectly infringing Plaintiff's rights under federal law in the Copyrighted Musical Composition and in any sound recordings, whether now in existence or later created, that is owned or controlled by Plaintiff ("Plaintiff's Musical Composition"), including without limitation by using the Internet or any only media distribution system to reproduce (i.e., download) any of Plaintiff's Musical Composition, to distribute (i.e., upload) any of Plaintiff's Musical Composition, or to make any of Plaintiff's Musical Composition available for distribution to the public, except pursuant to a lawful license or with the express written authorization of the Plaintiff. Defendants also shall destroy all copies of Plaintiff's Recordings that Defendants have uploaded and/or downloaded onto any computer and/or electronic devices, hard drives and/or servers without Plaintiff's authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendants' possession, custody, or control.";

C. That the Honorable Court issue the injunctive relief against defendants, and that defendants, their agents, representatives, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from copying, selling, distributing and/or performing publicly, or any other infringing of copyrighted material owned by or registered by the plaintiff;

D. That the Honorable Court enter an order of impoundment pursuant to 17 U.S.C. §§503 and 509(9) impounding all infringing physical and/or digital copies of all kinds of derivative infringing material of plaintiff's copyright work., which are in defendants' possession or under their control;

E. That this Honorable Court award damages for infringement of plaintiff's Copyrighted Musical Composition pursuant to 17 U.S.C. §504 (b). Including Plaintiff's costs in this action, reasonable attorneys' fees incurred herein, and such other and further relief as the Court may deem just and proper.

F. That defendants be required to pay to plaintiff *actual damages*, in consequence of defendants' infringement of the copyright, and to account and pay over to the plaintiff all the gains, *profits*, and advantages derived by defendants from its infringement of plaintiff's copyright, or such damages as the Court shall appear proper within the provisions of the copyright statutes, but not less than **$46,502,578.80.**

G. That defendants be required to deliver up to the be impounded during the pendency of this action all copies in their possession and/or under their control infringing said copyright, and to deliver up for destruction all infringing copies and all other equipment used for and/or during the process of making the infringing copies.

H. **That the District Court order defendants to pay plaintiff** *general, special, actual damages* in the amount of **$46,502,578.80** against all Defendants sued in their individual and/or representative capacities, for the Plaintiff, or an amount to be determined according to proof during the trial, as provided by the law and statutes of the United States. Including: (1) Plaintiff's damages and defendants' profits pursuant to 17 U.S.C. §504(b).

I. That this Honorable Court award ***compensatory and general damages*** in the amount of **$3,000,000.00** against all Defendants sued in their individual and/or representative capacities, for the Plaintiff, or an amount to be determined according to proof during the trial, as provided by the laws of the state of Florida.

J. That this Honorable Court also award exemplary and ***punitive damages*** in the amount of **$3,000,000.00** against all Defendants sued in their individual and/or representative capacities, or an amount to be determined at trial, in light of Defendants' *willful*, wanton, and malicious acts with conscious disregard and deliberate indifference to Plaintiff's rights. Including Plaintiff's rights under the laws of the state of Florida.

K. That this Honorable Court award Plaintiff his costs, expenses, and attorney's fees pursuant to 17 U.S.C. §504.

L. Pre-judgment interest; and as indicated above, the Plaintiff seeks *compensatory* damages, *actual damages and profits*, *punitive* damages, *injunctive relief* and any other relief this Honorable Court deems equitable, just and appropriate.

### JURY DEMAND

Plaintiff hereby respectfully requests a *jury trial* on all issues triable to a jury.

Dated: October 18, 2024.

Respectfully submitted,

**COBO ESTRELLA LAW**
By: */s/ Humberto Cobo-Estrella*
Humberto F. Cobo-Estrella, Esq. *(pro hac vice)*
USDC-PR230108
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 529-7140
E-mail: hcobo@hcounsel.com

**SUERO LAW, PLLC**
By: *s/ Evelyn I. Suero*
Evelyn I. Suero, Esq.
Florida Bar: 106727
1001 Brickell Bay Drive, Suite 2700
Miami, Florida 33131
Tel./E-Fax (305) 396-8772
E-mail: esuero@suerolawpllc.com

*Attorneys for Plaintiff Rene Lorente Garcia*
*a/k/a Rene Lorente*