UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-23066-CIV-ALTONAGA/Reid

RENE LORENTE-GARCIA,

      Plaintiff,

v.

CAROLINA GIRALDO-NAVARRO,
*et al.*,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Carolina Giraldo-Navarro ("Karol G"), Tijs Michiel Verwest ("Tiësto"), Atlantic Recording Corporation ("Atlantic"), Kobalt Music Publishing America, Inc. ("Kobalt"), Sony Music Publishing (US) LLC ("Sony"), and Warner Records Inc.'s ("Warner['s]") Motion to Dismiss Second Amended Complaint [ECF No. 72], filed on January 2, 2025. Plaintiff, Rene Lorente-Garcia filed an Opposition ("Response") [ECF No. 80]; to which Defendants filed a Reply [ECF No. 84]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND

This action arises from allegations of copyright infringement. (*See generally* Second Am. Compl. ("SAC") [ECF No. 64]). Plaintiff is a professional composer of Latin music, well known in the Cuban American community for his flute-playing. (*See id.* ¶¶ 21, 33). He wrote and performed one of his most acclaimed works, "Algo Diferente," in 1998 and registered it with the

United States Copyright Office on May 30, 2000. (*See id.* ¶¶ 34–35; *see also id.*, Ex. 1, Certificate of Registration [ECF No. 64-1]).

The song has streamed on major digital platforms — such as Spotify and Apple Music — since 2007. (*See* SAC ¶ 40). Plaintiff also performed it on the internationally acclaimed Spanish program "Noches de Estrella," on April 8, 2008. (*See id.* ¶ 41). The YouTube channel "spicandproud" featured a recording of this live performance, garnering over 1,400 views. (*See id.*). Plaintiff also showcased his song on his personal YouTube channel, Rene Lorente (@renelorente), which boasts over 3,690 subscribers. (*See id.*). Additionally, the song's melody has appeared in multiple albums released between 2000 and 2007. (*See id.* ¶ 40).

Tiësto, a celebrated Dutch DJ and producer; and Karol G, a globally recognized Colombian singer-songwriter, composed the allegedly infringing track, "Don't be Shy." (*See id.* ¶¶ 22–23, 42, 45). Atlantic released "Don't be Shy" on August 12, 2021; within two years, it amassed at least 392 million performances, uploads, downloads, saves, and shares. (*See id.* ¶¶ 42, 45).

Plaintiff alleges that "Don't be Shy" is "substantially similar" to "Algo Diferente," because the former borrows his track's rhythm, harmony, and melody — resulting in what Plaintiff and his expert characterize as an "unauthorized reproduction" of Plaintiff's work. (*Id.* ¶ 50 (emphasis omitted); *see also id.* ¶¶ 51–56; *id.*, Ex. 3, Prelim. Expert Report . . . [ECF No. 64-3] 92–93).[1] Despite this purported copying, Plaintiff received neither credit nor any compensation. (*See* SAC ¶ 45). He accuses Tiësto and Karol G of colluding to produce and distribute "Don't be Shy" for commercial gain, while knowingly infringing his copyright. (*See id.* ¶¶ 40–41, 43–46). Plaintiff further alleges that Atlantic, Kobalt, Sony, and Warner facilitated the infringement by distributing

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

the song globally through streaming services, radio airplay, and digital downloads.  (*See id.* ¶¶ 26–29).

On August 29, 2023, Plaintiff initiated this action against Defendants[2] (*see* Compl. [ECF No. 1] ¶¶ 14–25; *see also* SAC ¶¶ 21–29), asserting four claims: a claim of copyright infringement against Karol G and Tiësto (Count I) (*see* SAC ¶¶ 60–78); a claim of contributory and vicarious infringement against Atlantic, Kobalt, Sony, and Warner (Count II) (*see id.* ¶¶ 79–81); a claim of unfair enrichment and defamation against Karol G and Tiësto (Count III) (*see id.* ¶¶ 82–89); and a claim of intentional infliction of emotional distress ("IIED") against all Defendants (Count IV) (*see id.* ¶¶ 90–94).  Plaintiff seeks declaratory and injunctive relief, along with damages totaling tens of millions of dollars.  (*See id.* 32–34).  Defendants ask the Court to dismiss the SAC for failure to state any claims for relief.  (*See generally* Mot.; Reply).

## II.  LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Twombly*, 550 U.S. at 555 (alteration added; citation omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."

---

[2] Since filing this case, Plaintiff has dropped certain fictitious Defendants, and the Court has dismissed others — namely, Teemu Brunila, Jonas David Kröper, and Yoshi Breen — for lack of personal jurisdiction. (*See* Oct. 15, 2024 Order [ECF No. 63] 2–3; Dec. 13, 2024 Order [ECF No. 70] 1).

*Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint "in a light most favorable to the plaintiff" and take its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

### III. DISCUSSION

#### A. Count I: Copyright Infringement

According to Defendants, Plaintiff's copyright claim fails because the allegations do not establish a reasonable possibility of access, as the song's limited online presence and modest viewership do not support an inference that Defendants encountered it. (*See* Mot. 6–10; Reply 4–6). Plaintiff insists that Defendants had ample opportunity to access the work, as the SAC shows that "Algo Diferente" was publicly released on multiple albums, widely distributed online, and performed on live television. (*See* Resp. 4–7).

To state a direct copyright infringement claim, a plaintiff must allege that: "(1) [he] owns a valid copyright, and (2) the defendant copied the constituent elements of the work that are original." *Stripteaser, Inc. v. Strike Point Tackle, LLC*, No. 13-62742-Civ, 2014 WL 866396, at *2 (S.D. Fla. Mar. 5, 2014) (alteration added; citing *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010)). Plaintiff alleges — and Defendants do not dispute — that he

owns a copyright for "Algo Diferente," registered under U.S Copyright Registration Number PAu 2-496-298.  (*See* SAC ¶¶ 34, 65).  Hence, to state a copyright infringement claim, Plaintiff need only plead that Defendants copied some of that work's protected elements.  *See Disney Enters., Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1307 (S.D. Fla. 2011) (citation omitted).

"Where there is no direct proof of copying, a plaintiff may establish copying by alleging defendant had access to plaintiff's work and [] plaintiff's and defendant[s'] works are substantially similar." *Stripteaser, Inc.*, 2014 WL 866396, at *2 (alterations added; citing *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008)).  If a plaintiff is unable to show access, the claim may still survive a motion to dismiss if he alleges facts showing the works are "strikingly similar." *Marasco v. Taylor Swift Prods., Inc.*, No. 24-cv-14153, 2024 WL 3636658, at *4 (S.D. Fla. July 26, 2024) (citing *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 n.6 (11th Cir. 2002)), *report and recommendation adopted*, 2024 WL 3636656 (S.D. Fla. Aug. 2, 2024). Striking similarity "exists where proof of similarity is so striking that the possibilities of independent creation, coincidence, and prior common source are, as a practical matter, precluded." *Id.* (citing *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253–54 (11th Cir. 2007)).

Plaintiff does not allege direct proof of copying but instead claims that Defendants had ample access to his track, and "Don't be Shy" is substantially similar to "Algo Diferente."  (SAC ¶¶ 40–41, 48–59, 64).  He goes further still, asserting that the infringing work is "strikingly similar" to his original composition.  (*Id.* ¶ 64).  Defendants challenge only Plaintiff's access allegations, contending they are insufficient to establish copying — seemingly ignoring Plaintiff's striking similarity allegation.  (*See* Mot. 6–10).  Because the Court finds Defendants' access argument unpersuasive, it does not reach the striking similarity theory.

To plead access, a plaintiff must allege the defendant had a "reasonable opportunity to view" the work in question. *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1249 (11th Cir. 1999) (citation and quotation marks omitted). This can be shown by establishing the work's "widespread dissemination[.]" *Kelly Tracht, LLC v. Dazzle Up, LLC*, No. 17-80434-Civ, 2017 WL 4681329, at *2 (S.D. Fla. Oct. 18, 2017) (alteration added; citing *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 F. App'x 873, 882 (11th Cir. 2015); other citations omitted). Yet, "[a]ccess may not be inferred through mere speculation or conjecture." *Herzog*, 193 F.3d at 1250 (alteration added; citations and quotation marks omitted).

Courts have found that mere availability of a copyrighted work on the internet, standing alone, "is insufficient to show access through widespread dissemination." *Loomis v. Cornish*, No. 12-cv-5525, 2013 WL 6044345, at *12 (C.D. Cal. Nov. 13, 2013) (citation omitted); *see also O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008) ("[T]he mere fact that [a] work was posted on the internet prior to the creation of defendants' work is insufficient by itself to demonstrate wide dissemination." (alterations added; citations omitted)); (Mot. 8 (citations omitted); Reply 4–6). Rather, a work "must achieve a high degree of commercial success or be readily available in the relevant market." *Loomis*, 2013 WL 6044345, at *10 (collecting cases); *see also Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1100 (7th Cir. 2017) (reasoning that a plaintiff may satisfy the access requirement "by showing a copyrighted work was so widely disseminated that the defendant can be presumed to have seen or heard it" (citation omitted)).

Even accepting this premise, Plaintiff's allegations go well beyond mere online availability. (*See generally* SAC). To start, Plaintiff claims to be a celebrated musician and flutist, well-known in the Cuban American community — an assertion the Court accepts as true. (*See id.*

¶¶ 21, 33); *see also O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1542 (S.D. Fla. 1988) (citation omitted).

Plaintiff further alleges Defendants have had ample access to his song through major streaming platforms like Spotify and Apple Music since 2007, a live performance on the Spanish program "Noches de Estrella" in 2008, and a YouTube video of that performance with over 1,400 views. (*See* SAC ¶¶ 40–41). He also uploaded the song to his personal YouTube channel with over 3,600 subscribers, and the melody appeared on multiple albums released between 2000 and 2007. (*See id.* ¶¶ 40–41). Taken together, these allegations depict a song — crafted by a popular musician — that was not just available but actively disseminated across multiple platforms, making it plausible that Defendants had a "'reasonable opportunity to view'" Plaintiff's work. *Herzog*, 193 F.3d at 1250 (citation omitted). Plaintiff thus adequately alleges access and states a copyright infringement claim.

**B. Count II: Contributory and/or Vicarious Infringement**

Defendants contend that Plaintiff's contributory and vicarious infringement claim against Atlantic, Kobalt, Sony, and Warner fails, because there is no viable claim of direct infringement and, moreover, the same Defendant cannot simultaneously be both a direct and secondary infringer. (*See* Mot. 10). Plaintiff asserts that dismissing any Defendant now would be premature, pointing to the need for discovery to untangle the complex web of relationships between the parties. (*See* Resp. 8). The Court takes up both theories of indirect liability separately but notes that the Eleventh Circuit recognizes there is no clear distinction between the two. *See Michael Grecco Prods., Inc. v. RGB Ventures, LLC*, No. 16-cv-1335, 2017 WL 4077045, at *5 (M.D. Fla. Sept. 14, 2017) (citing *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987)).

**Contributory infringement.**   "One infringes contributorily by intentionally inducing or encouraging direct infringement[.]"   *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (alteration added; citation omitted); *see also Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1241 n.6 (11th Cir. 2014).   Thus, to state such a claim, a plaintiff must allege: (1) a third party directly infringed the copyright; (2) the defendant knew about this infringement; and (3) the defendant materially contributed to it.   *See Duncanson v. SJ Wathen Bloomington, LLC*, No. 14-cv-704, 2018 WL 1071958, at *4 (M.D. Fla. Feb. 27, 2018) (citations omitted).

Plaintiff plausibly alleges all three elements.   First, Plaintiff alleges that Tiësto and Karol G directly infringed his copyrighted composition, "Algo Diferente," by reproducing its melody and musical arrangement in "Don't Be Shy," without authorization.   (*See* SAC ¶¶ 42–43, 46).   Second, Plaintiff insists that Atlantic, Kobalt, Sony, and Warner knew of the infringement — at the very least after receiving a cease-and-desist letter in June 2022 — yet continued to distribute and promote the infringing work.   (*See id.* ¶¶ 44, 66; *see also id.*, Ex. 2, June 16, 2022 Copyright Infringement Notices [ECF No. 64-2]).   Finally, Plaintiff alleges that these Defendants materially contributed to the infringement by facilitating the song's global release, profiting from its widespread distribution, and encouraging public performances.   (*See* SAC ¶¶ 43, 79–80).

**Vicarious infringement.**   One "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it[.]"   *Grokster*, 545 U.S. at 930 (alteration added; citation and footnote call number omitted).   To state such a claim, a plaintiff must allege that: (1) defendant profited from a third-party's direct infringement; and (2) defendant had the right to stop or limit the infringement but did not.   *See UMG Recordings, Inc. v. Vital Pharms., Inc.*, No. 21-cv-60914, 2022 WL 2670339, at *9 (S.D. Fla. July 11, 2022) (citation omitted).   Vicarious liability

8

can attach even if a defendant "'was in no way directly involved in the actual copying.'" *Id.* (quoting *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016)).

As with contributory infringement, Plaintiff plausibly alleges the required elements. He states Atlantic, Kobalt, Sony, and Warner profited from the global distribution, performance, and sale of "Don't Be Shy," which directly infringed Plaintiff's copyrighted work, "Algo Diferente." (*See* SAC ¶¶ 43, 45, 79–81). Plaintiff further alleges that these Defendants had the authority to control the infringing activities but chose not to, continuing to promote and distribute "Don't Be Shy" even after being notified of the infringement in June 2022. (*See id.* ¶¶ 44, 66, 81).

Defendants argue that Plaintiff's contributory and vicarious infringement claims must be dismissed, asserting there is no valid underlying claim of direct infringement and that a single defendant cannot be both a direct and secondary infringer. (*See* Mot. 10). As discussed, however, Plaintiff *has* stated a claim for direct infringement, and it is well settled that litigants may plead inconsistent or alternative claims. *See* Fed. R. Civ. P. 8(d)(2), (3); *see also Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014) (citation omitted).

### C.  Count III (Unfair Enrichment/Defamation) and Count IV (IIED)

***Preemption.***   Defendants next argue that Plaintiff's state law claims — for unfair enrichment, defamation, and intentional infliction of emotional distress — are merely repackaged copyright infringement claims and, as a result, are preempted by the Copyright Act. (*See* Mot. 10–12; Reply 6–8). According to Plaintiff, the claims require an extra element beyond simple copyright infringement, placing them outside the scope of preemption. (*See* Resp. 8–9).

The Copyright Act's preemption provision states:

[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed

exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (alterations added).  Courts use a two-part test to determine if the Copyright Act preempts a state law claim.  *See Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, 515 F. Supp. 3d 1292, 1299 (S.D. Fla. 2021) (citation omitted), *aff'd*, No. 21-10410, 2023 WL 3454614 (11th Cir. May 15, 2023)).  Preemption occurs if the rights at issue: "(1) fall within the subject matter of copyright set forth in sections 102 and 103, and (2) are equivalent to the exclusive rights of section 106."  *Id.* (alteration adopted; citation and quotation marks omitted).

Plaintiff's composition, "Algo Diferente," qualifies as a "musical work[]" under 17 U.S.C. section 102(a)(2), thus directing the Court's attention to the equivalency analysis.  *See id.* (alteration added).  Under this second prong, "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution[,] or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption."  *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001) (alteration added; citation and quotation marks omitted).  This is known as the "extra element test[.]"  *Id.* (alteration added; citation and quotation marks omitted).  Under the test, a state law claim is not preempted when "the extra element changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim."  *Id.* (emphasis in original; citation and quotation marks omitted).

a. Count III

Defendants assert that Plaintiff's "unfair enrichment/defamation" claim is preempted by the Copyright Act and should be dismissed.  (SAC 28; *see also* Mot. 10–12).  Under Florida law, the elements of an unjust enrichment claim are: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying

10

the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citations omitted). Plaintiff alleges he conferred a benefit on Defendants by means of their unauthorized use of his intellectual property; Defendants knowingly accepted, exploited, and retained that benefit; and it would be unjust for Defendants to keep the profits derived from his copyrighted work without compensating him. (*See* SAC ¶¶ 82–89).

"As an initial matter, unlike implied-in-fact contract claims, quasi-contract claims — like unjust enrichment — are almost always preempted." *Fuss v. Bensch*, 601 F. Supp. 3d 1329, 1337 (N.D. Ga. 2022) (citation and quotation marks omitted). This is because "a state-law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and, hence, preempted insofar as it applies to copyright subject matter." *Id.* (alteration adopted; quotation marks and emphasis omitted; quoting 1 Nimmer on Copyright § 1.15[G]; other citation omitted).

Plaintiff's claim is no exception. He alleges harm stemming solely from the unauthorized use of his intellectual property and identifies no "extra element" beyond that infringement to support the unjust enrichment claim. (*See* SAC ¶¶ 82–89); *see also Fuss*, 601 F. Supp. 3d at 1337 (citation omitted). Unlike cases where litigants assert an expectation of compensation or a prior agreement, Plaintiff makes no such contention here. *See Poet Theatricals Marine*, 515 F. Supp. 3d at 1303 (collecting cases). Instead, he alleges Defendants "unjustifiably [took] the credit for supposedly having written/authored the infringing work[.]" (SAC ¶ 82 (alterations added)). He also states Defendants "knowingly received a benefit as a result of the infringement of ["Algo Diferente"] with no legal justification []or right to do so." (*Id.* ¶ 87 (alterations added)).

These allegations amount to nothing more than the use and misattribution of Plaintiff's copyrighted material — hardly the "extra element" needed to avoid preemption. *See Fuss*, 601 F.

Supp. 3d at 1337–38; *see also Foley*, 249 F.3d at 1285 (stating the Copyright Act's preemption is "generally broad" (citation omitted)).  Boiled down to its essence, Plaintiff's unjust enrichment claim repackages his copyright infringement allegations and seeks to enforce rights equivalent to those created by the Copyright Act.  *See Poet Theatricals Marine*, 515 F. Supp. 3d at 1304.

Plaintiff's *defamation* claim, although included within the same count and relying on overlapping factual allegations (*see* SAC ¶¶ 82–89), does introduce an extra element beyond copyright infringement.  Under Florida law, defamation requires that: (1) a defendant publish a false statement, (2) the statement was shared with a third party, and (3) plaintiff suffered damages as a result.  *See Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1344 (S.D. Fla. 1998) (citations omitted).  Because defamation turns on the truth or falsity of a statement, rather than mere copying, it includes an extra element that precludes preemption under the Copyright Act.  *Cf. Archer v. Holmes*, No. 17-cv-2051, 2018 WL 534475, at *3 (N.D. Ga. Jan. 23, 2018) ("Because the false representation of a material fact is not only a required element, but in truth the 'gravamen' of a fraud claim, it adds the extra element that qualitatively distinguishes [plaintiff]'s fraud claim from copyright infringement." (alteration added; footnote call number omitted)).

> b. Count IV

Defendants likewise contend that Plaintiff's IIED claim is preempted by the Copyright Act. To state an IIED claim, a plaintiff must plead four elements: (1) defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and utterly intolerable in a civilized society; (3) the conduct caused emotional distress; and (4) the emotional

distress was severe. *See Moore v. Otero*, No. 16-cv-303, 2016 WL 4267795, at *4 (M.D. Fla. Aug. 11, 2016) (citing *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015)).

Plaintiff claims Karol G and Tiësto altered the copyrighted song to create a derivative work that includes "vulgar profanity[,]" causing him "emotional distress[.]" (SAC ¶ 90 (alterations added)). As for Atlantic, Kobalt, Sony, and Warner, Plaintiff alleges they reproduced, distributed, and sold the derivative work, leading to further emotional and reputational harm. (*See id.* ¶ 91).

The Copyright Act grants exclusive rights "to reproduce the copyrighted work[,]" "to prepare derivative works[,]" and "to distribute copies . . . to the public[.]" 17 U.S.C. § 106 (alterations added). Plaintiff's IIED claim against Atlantic, Kobalt, Sony, and Warner targets this very conduct; as it is based entirely on the "unauthorized reproduction, alteration, sale, and distribution" of his copyrighted material. (SAC ¶ 91). Courts consistently find such claims preempted, as they "do nothing more than seek to vindicate the same rights" that the Copyright Act protects. *Mills v. Alphabet Inc.*, No. 16-cv-4669, 2018 WL 1569838, at *7 (S.D.N.Y. Mar. 28, 2018) (citations omitted); *see also Rainey v Wayne State Univ.*, 26 F. Supp. 2d 963, 969 (E.D. Mich. 1998) (finding an emotional distress claim preempted because "the extreme and outrageous conduct which plaintiff relies upon to prove her claim is the unauthorized reproduction of her artwork[,]" which "is exactly what copyright law protects" (alteration added)).

The claim against Karol G and Tiësto presents a closer call. Plaintiff alleges that the duo altered his work by adding profanity — like the phrase "Fuck 'em" — to create an unauthorized derivative, causing him emotional and reputational harm. (SAC ¶ 90 (quotation marks omitted)). This is not just about unauthorized use; rather, it is about the character of the changes. While courts typically preempt emotional distress claims rooted in infringement, *see, e.g.*, *Giddings v. Vision House Prod., Inc.*, No. 05-cv-2963, 2007 WL 2274800, at *2 (D. Ariz. Aug. 7, 2007), the

offensive nature of Karol G and Tiësto's alterations arguably injects a new element, helping the claim to avoid copyright preemption. The Court will not decide this question, however, as it makes no difference to the outcome because Plaintiff still fails to state an IIED claim, as explained below.

***Failure to state claims.*** Defendants argue that Plaintiff fails to state a claim for relief in Counts III and IV. (*See* Mot. 12–16; *see also* Reply 6–8). Because the unjust enrichment claim in Count III, as well as the IIED claim against Atlantic, Kobalt, Sony, and Warner in Count IV, are preempted by the Copyright Act, the Court need not decide whether they state viable claims. The focus is instead on the defamation and IIED claims against Karol G and Tiësto.

a. Count III

As discussed, Plaintiff must allege the following to state a defamation claim under Florida law: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Diaz v. Miami-Dade Cnty.*, 424 F. Supp. 3d 1345, 1364 (S.D. Fla. 2019), *aff'd*, 849 F. App'x 787 (11th Cir. 2021) (citation and quotation marks omitted). To survive a motion to dismiss "[i]n a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (alteration added; citation and quotation marks omitted).

Plaintiff broadly alleges that Defendants falsely took credit for writing and authoring "Don't Be Shy" in unspecified media appearances, misattributing Plaintiff's work and diminishing his recognition as the rightful composer. (*See* SAC ¶¶ 82–85, 88). Plaintiff further claims this misrepresentation caused him reputational, emotional, and economic harm. (*See id.* ¶¶ 84, 86).

14

Whether he is a public official or private person, Plaintiff's allegations are insufficient. "In the absence of the necessary facts — [such as] when the statements were made — and an adequate description of the statements," Plaintiff's defamation claim against Karol G and Tiësto fails to meet the required pleading standard. *Five for Ent. S.A.*, 877 F. Supp. 2d at 1328–29 (alteration added). Consequently, this claim is dismissed.

      b. <u>Count IV</u>

As noted, a plaintiff must allege four elements to state a claim for IIED: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (citations omitted). "'Under Florida law, whether conduct is sufficiently outrageous and intolerable as to form the basis for a claim of IIED is a matter of law for the court, not a question of fact.'" *Arasteh v. LuxUrban Hotels Inc.*, No. 24-21990-Civ, 2024 WL 4370890, at *5 (S.D. Fla. Oct. 2, 2024) (alterations adopted; emphasis omitted; quoting *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499–1500 (M.D. Fla. 1993)).

The test for "outrageous conduct" asks whether the conduct "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Patterson v. Downtown Med. & Diagnostic Ctr., Inc.*, 866 F. Supp. 1379, 1383 (M.D. Fla. 1994) (quotation marks omitted; quoting *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985)). Florida courts apply "an extremely high standard" to determine whether conduct was "outrageous." *Cooper v. Empower U, Inc.*, 603 F. Supp. 3d 1317, 1322 (S.D. Fla. 2022) (citation and quotation marks omitted). "[M]ere insults, indignities, threats, or false allegations are not enough[,]" and "even allegations of reprehensible, objectionable, and offensive conduct have been rejected as insufficient to state a

claim for [IIED]." *Id.* (alterations added; quotation marks omitted; quoting *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004)).

Plaintiff's allegations fall well short of this "extremely high standard." *Cooper*, 603 F. Supp. 3d at 1322 (citation and quotation marks omitted). The allegation that Karol G and Tiësto added profanity to a derivative work — while perhaps offensive to Plaintiff — does not approach conduct that is "atrocious" or "utterly intolerable in a civilized community." *Patterson*, 866 F. Supp. at 1383 (quotation marks omitted; quoting *McCarson*, 467 So. 2d at 278). Florida courts have rejected IIED claims for behavior far more reprehensible. *See, e.g.*, *Arasteh*, 2024 WL 4370890, at *5 ("The hurling of 'humiliating language, vicious verbal attacks, and racial epithets,' including the n-word — while 'extremely reprehensible' — do not 'reach the level of outrageousness and atrociousness' required for an IIED claim." (alterations adopted; citations omitted; quoting *Lay v. Roux Lab'ys, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980))). Here, the alleged modifications do not amount to the extreme conduct IIED claims require.

### D.  Claims Against Warner

Finally, Defendants assert that Warner should be dismissed because the SAC contradicts prior allegations, lacks factual support for its claim that Warner exploited "Don't Be Shy" in the United States, and was amended solely to evade Warner's dismissal. (*See* Mot. 16–18; Reply 10). Plaintiff insists this argument is premature. (*See* Resp. 7–8). He is correct.

Defendants state Plaintiff alleges that Warner "released the infringing work in the United States and throughout various regions of the world, including Italy thru [sic] contemporary hit radio format [on] August 27, 2021." (Mot. 16 (alteration added; quotation marks omitted; quoting SAC ¶ 29)). At this stage, the Court must construe the operative complaint in a light most favorable to Plaintiff and accept his factual allegations as true. *See Brooks*, 116 F.3d at 1369 (citation

CASE NO. 24-23066-CIV-ALTONAGA/Reid

omitted).  While Defendants point to discrepancies with prior pleadings (*see* Mot. 16), amended complaints supersede earlier ones, *see Pace v. Peters*, 524 F. App'x 532, 536 (11th Cir. 2013) (citation omitted).  And the Court cannot conclude, as a matter of law, that Plaintiff is inventing facts to dodge dismissal.  *Cf. Goldstein v. Firer*, No. 20-cv-23402, 2022 WL 18704836, at *2 (S.D. Fla. May 2, 2022) (Order Memorializing Ruling on Motion to Dismiss) (citing *Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 201 F. Supp. 3d 1353, 1361 (S.D. Fla. 2016)).

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants, Carolina Giraldo-Navarro, Tijs Michiel Verwest, Atlantic Recording Corporation, Kobalt Music Publishing America, Inc., Sony Music Publishing (US) LLC, and Warner Records Inc.'s Motion to Dismiss Second Amended Complaint **[ECF No. 72]** is **GRANTED in part and DENIED in part**.  Counts III and IV are dismissed.

**DONE AND ORDERED** in Miami, Florida, this 20th day of February, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

17