**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 24-23066-CIV-ALTONAGA/REID**

RENE LORENTE GARCIA

Plaintiff,

v.

CAROLINA GIRALDO NAVARRO, *et al*.,

Defendants.

______________________________________________/

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

Defendants Carolina Giraldo Navarro *p/k/a* Karol G ("Karol G"), Tijs Michiel Verwest *p/k/a* Tiësto ("Tiësto"), Atlantic Recording Corporation ("Atlantic"), Kobalt Music Publishing America, Inc. ("Kobalt"), Sony Music Publishing (US) LLC ("Sony") and Warner Records Inc. ("Warner") (collectively "Defendants")[1] submit this memorandum of law in support of their motion for summary judgement dismissing with prejudice the complaint ("Complaint") of Plaintiff Rene Lorente Garcia ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff claims that Defendants' composition and recording *Don't Be Shy* ("DBS") infringes his musical composition *Algo Diferente* ("AD"). The Court denied Defendants' motion to dismiss, finding that the Complaint "adequately alleges access."[2] But this is now summary judgment and it is Plaintiff's burden not merely to plead "access" but to also provide sufficient proof to show that there is at least a disputed issue of material fact as to whether there was a reasonable basis on which the Defendants could have had access to AD in creating DBS.

As shown below (and in the accompanying declaration of James Sammataro), there is no such dispute concerning access. Plaintiff has admitted that he has ***no evidence*** showing that AD achieved any commercial success, nor even copies of any agreements pursuant to which AD allegedly was exploited or records showing that AD has ever earned any income, indeed, he admits it has earned virtually no income. Lacking any such evidence, Plaintiff is left with only the

[1] Despite the Complaint having been twice amended, each of the corporate defendants remains incorrectly named. Atlantic is improperly named as "Atlantic Records *d/b/a* Atlantic Recording Corporation." Kobalt is incorrectly named as "Kobalt Music Group Limited *d/b/a* Kobalt Songs Music Publishing." Sony is incorrectly named as "Sony Music Publishing *d/b/a* Sony/ATV Tunes LLC." And Warner is incorrectly named as "Warner Bros. Records Inc."

[2] On the motion to dismiss, Defendants did not address whether there were any protectable elements in AD that were present in DBS nor did they address prior art or the manifest flaws that permeate the purported "expert" report of Richie Viera attached to the Complaint.

allegations in the Complaint, which—aside from being insufficient to avoid summary judgment—even taken at face value show only that AD was available on some streaming services (along with hundreds of millions of other songs) and in fact prove that it achieved only negligible views and streams (i.e., not remotely the level of commercial success required to show a reasonable possibility of access, and again, Plaintiff admits AD earned essentially nothing in over 20 years).[3]

Plaintiff also has no evidence of any actionable substantial similarity between AD and DBS. Plaintiff relies on the "opinions" of supposed expert Richie Viera. But as shown below, and in the companion "Daubert" motion to exclude Mr. Viera and his reports, Mr. Viera is wholly unqualified as a musicologist.[4] His reports are riddled throughout with improper conclusions that invade the province of the trier of fact. And, perhaps most fundamentally, his conclusion about AD's "originality" has been advanced without his having done ***any*** prior art search. When confronted at his deposition with his failure to comply with the most basic task of a musicologist assessing alleged originality, Mr. Viera testified he had no need to do such an analysis because he relied on his "instinct, something that was granted to [him] by God." (Statement of Material Undisputed Facts ("SUMF") ¶ 45.)

Plaintiff thus has no admissible evidence sufficient to satisfy his burden of proving Defendants' access to AD nor any evidence to show substantial similarity of protectable elements

[3] Indeed, as of June 2022, AD had only 2,718 streams on Spotify and mustered merely 1,417 YouTube views despite being on the platform for over a decade. (SUMF ¶ 22.) As alleged in the Complaint, Plaintiff's YouTube channel had less than 4000 subscribers, none of which include Defendants or the DBS songwriters.

[4] At Viera's deposition, he admitted that, rather than an actual degree in musicology, he has a "Platinum album" from something called the "World Salsa Congress" which supposedly identifies him as a musicologist. (SUMF ¶ 41.) More importantly, he demonstrated an inability (or at least an unwillingness) to read music (including a transcription containing the same notes claimed at issue in this proceeding) and could not even explain basic musical terms contained in his own "report." (*Id*., ¶ 43-44.)

between AD and DBS. In contrast, Defendants have provided uncontradicted sworn declarations showing that the songwriters of DBS, Teemu Brunila, Jonas Kröper, and Yoshi Breen (the "Writers"), as well as Tiësto and Karol G, never heard AD before writing DBS. The evidence is undisputed that DBS was independently created by the Writers in Europe on a Zoom call. And, as shown in the expert report of Dr. Lawrence Ferrara (the "Ferrara Report") (who, unlike Mr. Viera, has consistently been found qualified to testify as an expert musicologist and who also, unlike Mr. Viera, conducted a rigorous prior art analysis), once one filters out the commonplace unprotectable musical building blocks that pre-exist AD in prior art – something that Mr. Viera failed to do – all that remains in common between AD and DBS are a few fragmentary notes in a few measures of DBS (insufficient even to constitute a coherent melody). There is nothing remotely substantially similar between DBS and what arguably remains protectable in AD.

There is no disputed issue of material fact. Plaintiff has alleged, but lacks any evidence to prove, access because the undisputed evidence proves that AD had no commercial success and the Defendants and Writers never heard of AD. And once commonplace unprotectable musical building blocks that preexist AD and DBS in multiple prior art works are filtered out, all that remains are a few fragmentary notes that do not even constitute a coherent melody and do not remotely satisfy the requirement of "substantial similarity."[5] Defendants' motion for summary judgment should be granted, and Plaintiff's claims for direct and vicarious/contributory copyright infringement should be dismissed with prejudice.

## STATEMENT OF FACTS

For a full recitation of the undisputed material facts, Defendants respectfully refer the Court to the accompanying Rule 56.1 Statement of Undisputed Material Facts ("SUMF") and the

[5] Because DBS is not even substantially similar to any protectable elements in AD, it is axiomatic that the two works are not "strikingly similar."

supporting declarations and exhibits thereto.

## LEGAL ARGUMENT

### I. APPLICABLE LEGAL STANDARDS.

#### A. Motion for Summary Judgment.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a sufficient showing to establish the existence of an element essential to [his] case, and on which [he] will bear the burden at trial.'" *Cortes v. Universal Music Latino*, 477 F. Supp. 3d 1290, 1295 (S.D. Fla. 2020) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))). Therefore, "[i]f the non-movant... fails to adduce evidence which would be sufficient ... to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted); *see also Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (finding that "[i]f the non-moving party fails to sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate.") Further, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of fact is "genuine" if, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all ambiguities and draw[s] all justifiable

inferences in favor of the non-moving party." *Rice-Lamar*, 232 F.3d at 840 (citing *Anderson*, 477 U.S. at 255). However, when the record "taken as a whole" cannot support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. Copyright Infringement**.

To succeed on a direct claim of copyright infringement claim, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). In the Eleventh Circuit, the second element is assessed under two separate inquiries. First, "whether the defendant, as a factual matter, copied portions of the plaintiff's [work]." Second, "whether, as a mixed issue of fact and law, those elements of the [work] that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable." *Cortes v. Universal Music Latino*, 477 F. Supp. 3d 1290, 1295-96 (S.D. Fla. 2020) (quoting *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996)). Together, plaintiff must demonstrate copying by direct or indirect evidence, ***then*** "establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work with regard to its protected elements." *Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir. 2000) (emphasis added). If a plaintiff cannot demonstrate access, then she must "establish copying by demonstrating that [the] original work and the putative infringing work are ***strikingly similar***." *Morford v. Cattelan*, 2024 WL 3857453, at *2 (11th Cir. Aug. 16, 2024) (emphasis added).

i. <u>Access</u>.

A plaintiff who "does not have direct proof of copying" may satisfy the first prong by

demonstrating that "defendants had access to the copyrighted work." *Oravec*, 527 F.3d at 1223 (quoting *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999)). To do so, the plaintiff must show that the "defendants had a reasonable opportunity to view or to copy his work." *Dream Custom Homes, Inc. v. Mod. Day Const., Inc.*, 773 F. Supp. 2d 1288, 1302 (M.D. Fla. 2011), aff'd, 476 F. App'x 190 (11th Cir. 2012).

Access cannot be proven, however, by merely "showing that a defendant simply had some possible opportunity to review a plaintiff's copyrighted work." *Morford v. Cattelan*, No. 21-20039-CIV, 2023 WL 3971968, at *5 (S.D. Fla. June 12, 2023), aff'd, No. 23-12263, 2024 WL 3857453 (11th Cir. Aug. 16, 2024), *cert. denied*, No. 24-711, 2025 WL 1020359 (U.S. Apr. 7, 2025); *see also Herzog*, 193 F.3d at 1250 (noting that the term "[r]easonable opportunity does not encompass any bare possibility in the sense that anything is possible," and "[a]ccess may not be inferred through mere speculation or conjecture."). Therefore, "[a] plaintiff cannot prove access only by demonstrating that a work has been disseminated in places or settings where the defendant may have come across it." *Id.* Rather, some "nexus" between the plaintiff and the defendant is required to establish an inference of access in such circumstances. *Herzog*, 193 F.3d at 1249-52.

Consequently, "[a] work's mere presence on the internet alone [ ] is insufficient to demonstrate access." *Morford*, 2023 WL 3971968, at *5. Instead, a plaintiff must demonstrate either: (1) "some additional proof that the defendant had some relevant nexus to the plaintiff's work[;]" or (2) "that plaintiff's work enjoyed some meaningful level of popularity" and "considerable success or publicity." *Id.*; *see also Watt v. Butler*, 457 F. App'x 856, 859-60 (11th Cir. 2012) (holding that the plaintiff could not prove a finding of access where there was "no evidence that [the plaintiff's allegedly infringed song] ever caught on in popularity" or that the song or the performing group ever "became a commercial success."); *see also Design Basics, LLC*

*v. Lexington Homes, Inc.*, 858 F.3d 1093, 1100 (7th Cir. 2017) ("[T]he availability of the work must be so widespread "that the defendant can be presumed to have seen or heard it.").

ii. Striking Similarity.

When a plaintiff in a copyright action cannot demonstrate access, he can only succeed by establishing that the copying alleged is strikingly similar between the two works. *See Corwin v. Walt Disney*, 475 F.3d 1239, 1253 (11th Cir. 2007). The Eleventh Circuit has established a high bar for striking similarity. *Morford*, 2024 WL 3857453, at *2 (11th Cir. Aug. 16, 2024). The works must be so similar that it's virtually impossible to believe the defendant independently created the work or copied it from a common source. *Id.*; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 975 n.2 (11th Cir. 1997) (explaining that the similarities must be "so great it precludes the possibility of coincidence, independent creation or common source.."). To determine whether there is striking similarity, courts must assess the "uniqueness or complexity of the protected work as it bears on the likelihood of copying." *Id.* (quoting *Benson*, 795 F.2d at 975 n.2).

iii. Substantial Similarity.

If a plaintiff satisfies her burden of providing evidence of access, she must then demonstrate that "the defendant's work is substantially similar to the plaintiff's protected expression." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459-60 (11th Cir. 1994) (citing *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 & n. 11 (11th Cir. 1982)). To establish substantial similarity, plaintiffs must satisfy two tests: one extrinsic and objective; the other intrinsic and subjective. *Id.* (citing *Herzog*, 193 F.3d at 1257). Under the extrinsic test, "a court will inquire into whether, as an objective matter, the works are substantially similar in protected expression." *Lil' Joe Wein Music, Inc. v. Jackson*, 245 Fed. Appx. 873, 877 (11th Cir. 2007). Under the intrinsic test, "the Court determines whether, upon proper instruction, a

reasonable jury could find that the two works are substantially similar." *Roberts v. Gordy*, No. 13-24700-CIV, 2015 WL 12911328, at *2 (S.D. Fla. Sept. 15, 2015). Thus, the question of substantial similarity can be decided as a matter of law on a motion for summary judgment if: "the similarity concerns only noncopyrightable elements of a plaintiff's work, or when no reasonable trier of fact could find the works substantially similar." *Jackson*, 245 Fed. Appx. at 877 (quoting *Lassin v. Island Def Jam Music*, No. 04–22320–CIV, 2005 WL 5632056, at *6 (S.D. Fla. Aug. 8, 2005)).

The Eleventh Circuit has explicitly found that "[b]ecause a judge will more readily understand that all copying is not infringement…the "substantial-similarity" test is more often correctly administered by a judge rather than a jury…". *Intervest Construction, Inc. v. Canterbury Estate Homes, Inc*., 554 F.3d 914, 920–921 (11th Cir. 2008); *see also Jackson*, 245 Fed. Appx.at 877 (observing that deciding infringement prior to trial "permit[s] courts to put 'a swift end to meritless litigation' and to avoid lengthy and costly trials.").

## II. PLAINTIFF CANNOT SUCCEED ON HIS DIRECT COPYRIGHT INFRINGEMENT CLAIM.

To succeed on a direct claim of copyright infringement, Plaintiff must prove: (1) that Defendants had access to AD and that there is substantial similarity between protectable musical elements in AD and DBS; or (2) that AD and DBS are so "strikingly similar" as to preclude any other explanation for the alleged similarities between the works. Either way, there are no disputed issues of material fact here: Plaintiff cannot satisfy his burden of proof.

### A. It Is Undisputed That The Creators Of DBS Did Not Have Access To AD.

Plaintiff admittedly lacks any evidence showing that AD had sufficient commercial success to support his burden of proving access. (SUMF ¶¶ 11, 14-15.) "[A]ccess may not be proven by showing that a defendant simply had some possible opportunity to review a plaintiff's copyrighted work." *Morford*, 2023 WL 3971968, at *5. And "mere availability on the internet, without more,

is too speculative to find a nexus between [Plaintiff and Defendants (or the Writers)] to satisfy the factual copying prong of [Plaintiff's] infringement claims." *Morford*, 2024 WL 3857453, at *2. Instead, Plaintiff must also "show that the work has enjoyed considerable success or publicity." *Id*. (citing *Batiste v. Lewis*, 976 F.3d 493, 503–04 (5th Cir. 2020) (collecting cases).

Here, lacking any evidence that AD has had any commercial success (indeed, having admitted that AD has earned virtually no money in over 20 years), Plaintiff has only the naked allegations of the Complaint, which allege only that AD was merely available on YouTube, Spotify, and similar streaming channels (along with more than a hundred million other songs) and admit that AD had only negligible streams and views and was commercially unsuccessful. By contrast, Defendants' uncontroverted evidence shows that Defendants and the Writers never heard of AD until after they were notified of Plaintiff's claim in June 2022, almost 2 years after DBS was created. (SUMF ¶ 32.) Thus, there is no disputed issue of material fact that Defendants (or the Writers) did not have access to AD.

The Eleventh Circuit's decision in *Watt* is controlling and instructs that plaintiff cannot satisfy his burden of proving access. In *Watt*, the plaintiff performed the alleged infringing song at least 50 times within the Atlanta area, including at popular nightclubs, music festivals, and conventions; a music video for the song was broadcast in the Atlanta region; a segment of the song was included in a film that was never commercially released; and, the film's associated soundtrack experienced minimal sales. *See id* at 859-60. The district court found, and the circuit court affirmed, that the plaintiff could not show access where there was "no evidence that [plaintiff's allegedly infringed song] ever caught on in popularity" or that the song or the performing group ever "became a commercial success." *Id*. The Eleventh Circuit also found that plaintiff's assumption that defendants could have accessed his song based on these facts was "overly conjectural and

speculative, and therefore insufficient to establish a genuine dispute." *Id.*; *see also Benson v. Coca-Cola Co.*, 795 U.S. 973, 975 (11th Cir. 1986) (finding that evidence was insufficient to establish access where the plaintiff performed song primarily in South Florida, performed it on isolated occasions in three other states, and there was no evidence that any of the defendant's songwriters visited these venues during the relevant time period).

Similarly, in *Morford*, the plaintiff's work was publicly accessible on his Facebook page for nearly ten years, was included in one of his YouTube videos, and was highlighted in a blog post. *Morford*, 2023 WL 3971968, at *5. According to "online metrics," his website had been visited "from over 25 countries, with thousands of unidentified viewers potentially encountering" the alleged infringing work during the relevant period. *Id.* The district court, with the Eleventh Circuit affirming, found that plaintiff's proposed evidence failed to demonstrate widespread access. *Id.*; *Morford*, 2024 WL 3857453, at *2 (finding that plaintiff's "evidence misses the mark" and cannot meet the "widespread dissemination" standard which requires a plaintiff to "show that the work has enjoyed considerable success or publicity." (citing *Batiste v. Lewis*, 976 F.3d 493, 503–04 (5th Cir. 2020) (collecting cases)). As here, in *Morford*, the allegations of the complaint rebutted the necessary proof of "considerable success or publicity," and the court found that the plaintiff's attempts to prove widespread access under such facts actually supported "the opposite finding, that [the alleged infringing work] remained a relatively obscure work with very limited publication or popularity." *Morford*, 2023 WL 3971968, at *5.

Like in *Watt* and *Morford*, the undisputed facts here establish that AD did not achieve any level of popularity or success. Plaintiff admits he has no agreements to exploit AD. He admits he has no evidence showing that AD generated any income in over 20 years. He placed AD on four albums, for which he has no evidence of any sales (and there is no evidence that Defendants or the

Writers ever heard of any of the albums - on the contrary, the undisputed evidence is that the Defendants and Writers never heard AD before DBS was created). (SUMF ¶¶ 32-33.) And he admits that, prior to publicizing his claims (meaning long after DBS was created), AD had less than 1,000 views on YouTube and only 2,178 listens on Spotify in more than 15 years. (*Id.* ¶¶ 20, 22.) Consistent with *Watt* and *Morford*, this is the antithesis of commercial success.

For the same reason, there is no disputed issue of material fact that AD's online footprint represents anything other than its mere availability on streaming services that have more than a hundred million songs available. In the face of the Defendants' and the Writers' specific denial of ever having heard of AD (or of Plaintiff) before creating DBS, Plaintiff provides no evidence whatsoever sufficient to create a disputed issue of material fact as to whether there is any reasonable possibility of access. Rather, all that exists in this record are the allegations in the Complaint which, as in *Morford*, actually refute access: (1) Plaintiff's YouTube Channel had less than 3,900 subscribers, none of whom is any of the Defendants or Writers (*Id.* ¶ 21.); (2) as of June 2022, AD had a total of 2,713 listens on Spotify, and 609 views on YouTube (*Id.* ¶¶ 21, 22); and (3) in or around August 2024 the "monthly listeners" for Plaintiff's ***entire catalogue*** was a mere 101. (*Id.* ¶ 23.)

The AD YouTube video posted on April 8, 2008 by "spicandproud" had only garnered 1,148 views over 15 years as of the time Plaintiff filed his original complaint in August 2023. (SAC ¶ 41; D.E. 72, p. 8.) Following the filing of the Plaintiff's original complaint, that video has been viewed over 100,000 times (which, being after DBS was created, is irrelevant to access).[6] Mr. Brunila's declaration is undisputed: as of June 2022 – long after DBS was created – AD had

[6] For the same reason, Plaintiff's recent three YouTube links purporting to show AD's "popularity," only reflect the increased views arising in the wake of Plaintiff publicizing his claims and thus have nothing to do with access. (SUMF ¶ 13.)

only been viewed 609 times in 14 years on YouTube. (SUMF ¶ 20.) Having publicized his claims, Plaintiff was able, in one year, to massively increase the number of views AD attained in the 14 preceding years. Of course, any views after DBS was already created are irrelevant to access. *See Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1054 (C.D. Cal. 2010) (finding that to "logically support a claim that Defendant's copied Plaintiff's work, Defendants must have had access to Plaintiff's copyrighted work ***before*** the creation of the allegedly infringing work." (citing *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir.2007)).

There is no disputed material issue of fact that AD did not achieve what the Eleventh Circuit would deem "widespread dissemination." *See Watt*, 457 F. App'x at 859-60. Plaintiff has no evidence showing that AD reached the level of commercial success and popularity required to demonstrate a reasonable possibility of access. Rather, like in *Morford*, Plaintiff's claimed evidence (which consist solely of allegations in his Complaint) "supports the opposite finding, that [AD] remain[s] a relatively obscure work with very limited publication or popularity." *Morford*, 2024 WL 3857453, at *2. Defendants' and Writers' declarations affirm that they never heard of AD (or Plaintiff), and those Declarations are unrebutted. Plaintiff cannot show a disputed material issue of fact as to "access" and on that basis alone Defendants are entitled to summary judgment dismissing the Complaint.

**B. There Are No Substantial Similarities Between AD and DBS.**

While Plaintiff's total lack of evidence of access – indeed, his inability to show even a disputed material issue of fact – entitles Defendants to summary judgment, Plaintiff also cannot show that DBS is substantially similar to any protectable elements in AD. As established in the Ferrara Report (the Ferrara Declaration provides a roadmap to the Ferrara Report), once commonplace musical building blocks that exist in prior art are filtered out – as the law requires –

all that remains are isolated and fragmentary notes in a few measures that do not even constitute a coherent melody. (Ferrara Decl. ¶ 4.)

The law requires that unprotectable commonplace musical building blocks be filtered out. *Compulife Software Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020). Once filtered, "the burden shifts back to the plaintiff to prove substantial similarity between any remaining (i.e., unfiltered) protectable material and the allegedly infringing work." *Id.* Dr. Ferrara undertook the required analysis to filter out prior art, commonplace, and unprotectable musical elements. Mr. Viera did not.

As shown in detail in the companion Daubert motion, by failing to conduct any prior art analysis, Mr. Viera's report improperly compared unprotectable elements in AD with DBS. As such, his report wholly violates Federal Rule of Civil Procedure 26 in multiple ways. While expert musicologists can opine regarding probative similarities between two works, or whether the works possess objective similarities, *see Griffin v. Sheeran*, 351 F. Supp. 3d 492, 496 (S.D.N.Y. 2019), experts cannot offer conclusory opinions on ultimate issues such as substantial similarity. *See US Thrillrides, LLC v. Intamin Amuse. Rides Int'l Corp. Est.*, No. 6:22-cv-2338 (CEM), 2025 WL 549139, at *4-5 (M.D. Fla. Feb. 19, 2025) (finding that an expert cannot "opine as to the copyright infringement analysis itself" and conclude that illegal copying has occurred); *see also Adacel, Inc. v. Adsync Techs., Inc.*, No. 6:18-cv-1176 (WWB), 2020 WL 4588415, at *6 (M.D. Fla. July 9, 2020) ("[A] legal conclusion [ ] is not the proper subject of expert testimony") (citation omitted). Yet, Mr. Viera's reports repeatedly and improperly state that Defendants are infringers and plagiarizers.

An expert musicologist can, and indeed must, also consider and opine whether the plaintiff's work, or constituent elements of it, existed in prior art (and therefore are not original to

the plaintiff) and/or are otherwise unprotectable. *Griffin v. Sheeran*, *supra* at 496. Again, failing to do such an analysis is per se improper. *See Compulife*, 959 F.3d at 1303.

Without having examined prior art and filtered out unprotectable musical building blocks, Mr. Viera's reports improperly and repeatedly offer the ultimate conclusions that AD is original and that DBS is substantially similar to AD, conclusions that in any event lack any foundation in the absence of a prior art examination. In contrast, as shown in the Ferrara Report, any alleged similarities between AD and DBS consist of unprotectable commonplace musical building blocks, as evidenced by the numerous musical works that pre-and-post-date the creation of AD that are based on the same harmonic rhythm of the "circle of fifths" and the melody that derives from this chord progression. (Ferrara Decl., ¶¶ 13-17.)

The Ferrara Report analyzes seven prior works to AD that incorporate the same musical building blocks in AD that Plaintiff claims are also in DBS. (*Id.* ¶¶ 26, 29.) For example, the seminal work "Autumn Leaves" written by Joseph Kosma in 1947 and performed by, among others, Nat King Cole contains melodic similarities through the use of common chord progressions, also incorporated in both AD and DBS. (*Id.* ¶ 29.)[7] As determined by Dr. Ferrara, the prior art comparisons show that, after filtration, what remains in AD that is common with DBS cannot even be considered a "coherent 'melody' but only fragmentary and minimal commonplace notes and chord." (*Id.* ¶ 9, 28.) In contrast, Mr. Viera's improper and conclusory report, ignored prior art and concluded both that AD is "original" and DBS is infringing based on nothing more than Mr. Viera's "God granted instinct." (SUMF ¶ 45).

Mr. Viera's wholly improper report provides no competent admissible evidence to create

[7] At his deposition, having done no prior art analysis, Mr. Viera professed not even to know the song "Autumn Leaves."

a disputed material issue of fact as to whether DBS is substantially similar to any protectable elements in AD. Defendants are entitled to summary judgment because, in addition to the lack of any evidence of access, the only competent admissible evidence, provided by the Ferrara Report, establishes that DBS is not substantially similar to any protectable elements in AD.

**C. *Algo Diferente* and *DBS* Are Not Strikingly Similar**.

Because AD and DBS are not even substantially similar, it is indisputable that they are not and cannot be "strikingly similar. Nevertheless, because the wholly improper report of Mr. Viera asserts that they are strikingly similar, Defendants will briefly address his assertions.

Where, as here, a Plaintiff cannot satisfy his burden of proving access, he must prove that the two works are "strikingly similar" or so similar that it is virtually impossible to believe the defendant independently created the work or copied it from a common source. *Morford*, 2024 WL 3857453, at *2; *see also Corwin*, 475 F.3d at 1253 ("Striking similarity exists where the proof of similarity in appearance is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.'").

i. The Alleged Similarities Between AD and DBS Are Neither Unique Nor Complex

To prove striking similarity, Plaintiff must "present evidence that the similarities between the two works are unique or complex." *Watt*, 457 F. App'x at 861–62 (citing *Selle v. Gibb*, 741 F.2d 896, 904 (7th Cir. 1984)). As found repeatedly by the Eleventh Circuit, this requirement is "particularly important with respect to popular music, 'in which all songs are relatively short and tend to build on or repeat a basic theme.'" *Id*. (quoting *Benson v. Coca–Cola Co.*, 795 F.2d 973, 975 n. 2 (11th Cir.1986) (quoting *Selle*, 741 F.2d at 905).

In *Watt*, the Eleventh Circuit found that the musical components at issue were "not so complex or unique so as to preclude the possibility of independent creation, despite [plaintiff's]

expert's conclusion." 457 F. App'x 856, 862 (11th Cir. 2012). As in *Watt,* where the Court noted that the "the simplicity of the riff is what makes [defendant's] testimony of independent creation plausible." *Id,* Here, there is undisputed extensive prior art embodying the very same elements embodied in AD and in DBS (Ferrara Decl., ¶¶ 26-32), reinforcing the Writers' unrebutted evidence of independent creation. (SUMF ¶¶ 27, 32). Also as here, in the face of defendant's testimony of independent creation, the Eleventh Circuit in *Watt* held that where "the plaintiff ha[s] offered no evidence to contradict the defendant's testimony of independent creation," summary judgment is proper; *see also Benson v. Coca–Cola Co.*, 795 F.2d 973, 975 (11th Cir.1986) (*en banc* ) ("testimony [of writers of allegedly infringing song] constitutes uncontradicted evidence of independent creation, fully negating any claim of infringement").

Having done no prior art analysis, relying instead on his "instinct," Mr. Viera's pronouncement that AD and DBS are strikingly similar is baseless. Moreover, he inconsistently admits that the alleged similar elements of AD and DBS are "quite common," yet, at the same time, he inexplicably asserts that these "quite common" elements are somehow evidence of copying. (*See* SUMF ¶ 3, Ex. A.) Like in *Watt*, the unrebutted evidence here shows that DBS was independently created and, given that the alleged similarities (once prior art is filtered out) are virtually non-existent fragmentary notes, the alleged similarities are neither "unique" nor "complex." *Watt*, 457 F. App'x at 862.

ii. The Significant Differences Between AD and DBS Precludes a Finding of Striking Similarity

Finally, as the Ferrara Report shows, outside of the unprotectable commonplace musical building blocks that pre-exist in prior art, AD and DBS are very different compositions in every respect. (Ferrara Decl., ¶ 34.) DBS is of the electronic dance-pop genre, and is performed using electronic instruments and vocals. (*Id.*) DBS is in a minor key, and its bars are only in 4/4 time.

(*Id.*) It has a diatonic melody, meaning the notes are only those occurring naturally within the key signature; and there is a single basic chord progression throughout with slight variations. (*Id.*)

AD, by contrast, is styled with Latin jazz conventions, and is performed using mainly acoustic instruments. (*Id.*) AD switches between minor and major keys, and has bars both in 4/4 and 2/4 time. (*Id.*) AD's melody contains notes outside the key signature; and the chord progressions are varied and unrelated. The overall rhythms in AD and DBS are distinct. (*Id.*) AD contains complex jazz chords, while DBS contains solely basic chords. (*Id.*) Outside the unprotectable elements found in prior art, the harmonies and melodies throughout AD are objectively different than those in DBS. (*Id.* ¶ 35.)

The numerous and significant differences between AD and DBS refute even any theoretical claim of striking similarity. They are clearly and objectively distinctly different works. Indeed, Mr. Viera had to resort to distorting the transcription of DBS and omitting notes within the portion at issue to even claim the "same" melodic rhythm. (*Id.* ¶ 42.)

**III. PLAINTIFF CANNOT SUCCEED ON HIS INDIRECT COPYRIGHT INFRINGEMENT CLAIM AS A MATTER OF LAW.**

**A. Vicarious/Contributory Infringement.**

To prove a claim for contributory infringement requires that (1) a third party directly infringed the copyright; (2) the defendant knew about this infringement; and (3) the defendant materially contributed to it. *See Duncanson v. SJ Wathen Bloomington, LLC*, No. 14-cv-704, 2018 WL 1071958, at *4 (M.D. Fla. Feb. 27, 2018). To prove a claim for vicarious infringement, a plaintiff must establish that: (1) defendant profited from a third-party's direct infringement; and (2) defendant had the right to stop or limit the infringement but did not. *See UMG Recordings, Inc. v. Vital Pharms., Inc.*, No. 21-cv-60914, 2022 WL 2670339, at *9 (S.D. Fla. July 11, 2022). There is no clear distinction between these two theories of indirect infringement. *See Casella v. Morris*,

820 F.2d 362, 365 (11th Cir. 1987) (quoting *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984) ("[T]he lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn.")).

Where a direct claim fails, there is no viable claim for contributory or vicarious infringement. *See Cable/Home Commc'n Corp. v. Network Prods., Inc*., 902 F.2d 829, 845 (11th Cir. 1990) (finding that contributory infringement "necessarily must follow a finding of direct or primary infringement."); *Dream Custom Homes, Inc.* 773 F. Supp. 2d 1288, 1311 (dismissing claims of contributory and vicarious infringement when plaintiff's theory of direct infringement failed as a matter of law). Moreover, the same defendant cannot be both a direct infringer and a secondary infringer. *See A&M Recs. v. Napster, Inc.,* 239 F.3d 1004, 1013 n.2 (9th Cir. 2000); *Sound & Color, LLC v. Smith*, 22-cv-01508-AB, 2023 WL 2821881, at *16 (C.D. Cal. Feb. 28, 2023) ("[A] defendant cannot be secondarily liable for their own direct infringement.").

Because Plaintiff's direct claim of infringement should be dismissed on summary judgment, for the reasons set forth above, Plaintiff's vicarious and contributory infringement claims, therefore should be dismissed as well.

## IV. THERE IS NO DISPUTE THAT WARNER HAD NOTHING TO DO WITH DBS

Finally, while granting this summary judgment motion would dispose of all claims, Plaintiff has never provided any evidence to show that Warner Records has anything to do with DBS. The undisputed evidence shows that it does not. (SUMF ¶ 37.) Atlantic, not Warner Records, is the label exploiting the DBS sound recording. (*Id.* ¶ 34.) While Mr. Viera opines (wildly outside any area of competence) that the relationship between WMGC and Atlantic somehow implicates Warner, their corporate relationship is irrelevant. (*See Id.* ¶ 3, Ex. A.)

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for summary judgement dismissing the SAC with prejudice, and grant Defendants such other and further relief as it deems just and proper.

Dated: April 28, 2025
Miami, Florida.

Respectfully Submitted,

**PRYOR CASHMAN LLP**

By: /s/ *James Sammataro*

James G. Sammataro
Florida Bar No. 520292
Donald S. Zakarin (admitted *pro hac vice*)
Benjamin S. Akley (admitted *pro hac vice*)
jsammataro@pryorcashman.com
dzakarin@pryorcashman.com
bakley@pryorcashman.com
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (786) 582-3010