**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 24-23066-CIV-ALTONAGA/REID**

RENE LORENTE GARCIA

        Plaintiff,

v.

CAROLINA GIRALDO NAVARRO, *et al.*,

        Defendants.

_____/

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56.1 and Local Rule 56.1, defendants Carolina Giraldo Navarro *p/k/a* Karol G ("Karol G"), Tijs Michiel Verwest *p/k/a* Tiësto ("Tiësto"), Atlantic Recording Corporation ("Atlantic"), Kobalt Music Publishing America, Inc. ("Kobalt"), Sony Music Publishing (US) LLC ("Sony") and Warner Records Inc. ("Warner") (collectively "Defendants")[1] respectfully submit this statement of material facts as to which Defendants contend there exist no genuine issues to be tried in support of their motion for summary judgment.

**A.**    **Procedural Background and Plaintiff's Remaining Claims**.

1.    The extant claims against Defendants are: (I) Copyright Infringement; and (II) Vicarious/Contributory Copyright Infringement. (*See* D.E. 64, ¶¶ 60-81.)

2.    Plaintiff has attached to his currently-operative second amended complaint ("SAC") the following exhibits: (1) the Copyright Registration to *Algo Diferente* ("AD"); (2) pre-litigation

---

[1] Despite the Complaint having been twice amended, each of the corporate defendants remains incorrectly named. Atlantic is improperly named as "Atlantic Records *d/b/a* Atlantic Recording Corporation." Kobalt is incorrectly named as "Kobalt Music Group Limited *d/b/a* Kobalt Songs Music Publishing." Sony is incorrectly named as "Sony Music Publishing *d/b/a* Sony/ATV Tunes LLC." And Warner is incorrectly named as "Warner Bros. Records Inc."

communications; and (3) a purported "expert" musicology report of Richie Viera ("Viera"). (*Id.*, Ex. A-C.)

3. On March 3, 2025, Viera, a claimed "Entertainment law cases, Musicology, and Copyright Specialist" propounded another purported "expert" report on behalf of Plaintiff (the "Viera Initial Report"). (*See* Exhibit A attached hereto.)

4. On March 3, 2025, Dr. Lawrence Ferrara ("Dr. Ferrara") propounded an expert musicologist report on behalf of Defendants, which also rebutted the Viera report attached to the SAC (the "Ferrara Report"). (*See* Exhibit B attached hereto.)

5. On March 17, 2025, Viera propounded a rebuttal expert report to the Ferrara Report ("Viera's Rebuttal"). (*See* Exhibit C attached hereto.) Also, on March 17, 2025, Dr. Ferrara submitted a rebuttal report which simply confirmed that the rebuttal contained in the Ferrara Report remained accurate and complete.

6. On March 17, 2025, Barry M. Massarsky propounded a rebuttal expert damages report to the Viera Initial Report on behalf of Defendants (the "Massarsky Report"). (*See* Exhibit D attached hereto.)

7. On March 27, 2025, ten days after all expert reports were due per the operative Scheduling Order, Viera propounded a "sur-rebuttal" to the Massarsky Report on behalf of Plaintiff in violation of the Scheduling Order ("Viera's Sur-Rebuttal"). (*See* Exhibit E attached hereto.)

8. Defendants deposed Viera on April 8 and 10, 2025. (*See* Exhibit F attached hereto.)[2] Plaintiff deposed Dr. Ferrara on April 10, 2025.

---

[2] Select pages from the transcript of the Viera deposition have been compiled in Exhibit F (hereinafter "Viera Dep. Tr.")

9. Concurrent with the filing of their Motion for Summary Judgment, Defendants are filing a motion to exclude Viera pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert* ("Defendants' *Daubert* Motion").

10. Plaintiff produced the following documents in response to Defendants' discovery requests served on March 7, 2025: (a) Plaintiff's Copyright Certificate (Exhibit G attached hereto); (b) Plaintiff's Pre-Litigation Demand Letters (Exhibit H attached hereto); (c) Viera's Initial Report (Ex. A); and (d) scanned photos of the front-and-bank of four albums where AD is listed as a track (Exhibit I attached hereto.)

11. Plaintiff attested under "penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746" that the aforementioned documents" (those identified above) "consist of all documents under [his] possession which [he] believe[s] [to be] responsive to [Defendants] requests."  (Exhibit J attached hereto.)

12. On April 22, 2025, counsel for Plaintiff represented to the Court that Plaintiff has no documents pertaining to the "production and/or distribution of AD with any record company" and that "all his agreements back then, were verbal."  (D.E. 103, 2.)

13. In Response to Defendants' Interrogatory Requests, Plaintiff listed the following as the only documentary evidence he intends to present in support of his claims: (a) Viera's Reports; (b) Plaintiff's Copyright Registration for AD; (c) four Compact Disks, with AD on the track list; (d) three YouTube videos; and (e) Plaintiff's pre-litigation demand letters.

14. On April 25, 2025, Plaintiff declared under penalty of perjury that he "did not generate any significant royalty income in the United States [ ] from 2000 – 2024" for AD. (Exhibit K attached hereto.)

15. Plaintiff has not produced any documents or information showing that AD has

generated *any* income at any time from 2000 through 2024, confirming that there is no evidence that AD has achieved any commercial success.  (*See* Exs. J and K.)

**B.     *Algo Diferente*.**

16.    Plaintiff composed AD in 1998 (Ex. G.)

17.    Plaintiff registered his authorship of AD with the Copyright Office on May 30, 2000, and received a registration number of Pau2-496-298.  (*See Id.*)

*Plaintiff Has No Evidence of Access*.

18.    AD appeared on four albums: (1) "Madera y Metal" by Rene Lorente; (2) "Enrique Chia presenta a Rene Lorente y su flauta Cubano"; (3) "Reencuentro" by Rene Lorente and (4) "Algo Diferente" by Rene Lorente.  (*See* Ex. I.)

19.    Plaintiff has no evidence showing when, where or by whom these albums were distributed and has no evidence showing any sales or commercial success.  On the contrary, he has admitted that he has no evidence that AD earned any money between 2000 and 2024. (Exs. J and K.)

20.    As of June 2022, AD had been played only 670 times on YouTube. (*See* D.E. 72-2 ¶ 12.)

21.    As of June 2022, Plaintiff's YouTube Channel had less than 3700 subscribers,  (*Id.*, ¶ 11), none of whom are defendants or the Writers.

22.    As of June 2022, AD had only 2,718 listens on Spotify.  (D.E. 72-2 ¶ 12, Ex. A attached thereto.)

23.    In or around August 2024, the total number of "monthly listeners" on Spotify for Plaintiff's *entire catalogue* was 101 listeners. (*Id.*, ¶ 12.)

24.    As of June 2022, AD had never been added to any playlist on any streaming

platform, such as Spotify, YouTube, Apple, Amazon, and Deezer.  (*Id.*, ¶ 12.)

25.     Plaintiff has no documents pertaining to the production and/or distribution of AD with any record company.  (*See* D.E. 103, 2.)

26.     AD has not gained worldwide notoriety, popularity or commercial success over the 17 years since it was released and Plaintiff has admitted that AD has never earned money from 2000 through 2024.  (Exs. J and K; *see also* D.E. 72-2, ¶ 3; D.E. 72-3, ¶ 3; D.E. 72-4,¶ 4; D.E. 72-5, ¶ 9; D.E. 72-6, ¶ 9.)

**C.     *Don't Be Shy*.**

27.     The musical composition *Don't Be Shy* ("DBS") was composed by the Writers over Zoom on May 29, 2020.  (D.E. 72-2 ¶ 3).

28.     Writer Jonas Kröper, a German national, was in Holland at the time of writing DBS.  (D.E. 72-3 ¶ 3.)  Writer Yoshi Breen, a Dutch national, was also in Holland at the time of writing DBS.  (D.E. 72-4 ¶ 3.)   Writer Teemu Brunila ("Mr. Brunila"), a Finnish national, was in Finland at the time of writing DBS.  (See D.E. 72-2 ¶ 3).

29.     After writing DBS, Mr. Brunila and Tiësto worked on the production of DBS.  (*Id.* ¶ 4).  Karol G later added her vocals.  (*Id.*).

30.     DBS was released first as a single recording on August 12, 2021.  (Ex. A, p. 48).

31.     DBS was then released on Tiësto's album entitled, *Drive*.  (*Id.*)

32.     None of the Writers nor Tiësto nor Karol G had ever heard of AD or Plaintiff prior to or at the time of writing, producing, or recording DBS.  (D.E. 72-2, ¶ 3; D.E. 72-3, ¶ 3; D.E. 72-4,¶ 4; D.E. 72-5, ¶ 9; D.E. 72-6, ¶ 9.)

33.     The Writers and Defendants first learned of AD and Plaintiff when Plaintiff notified them of his claims in or around June 2022.  (D.E. 72-2, ¶ 14; D.E. 72-3, ¶ 3 11; D.E. 72-4; ¶ 11).

34.     Atlantic was not involved with the writing of DBS. (*See* D.E. 72-6, ¶ 6). It was involved in the recording of DBS and the marketing and distribution of DBS. (*Id.*)  Atlantic also collects and pays royalties to the artists attributable to the sale or streaming activity of DBS. (*Id.*)

35.     Kobalt was not involved with the creation, recording, marketing or distribution of DBS. (D.E. 19-9 ¶ 8-9.)  It administers, for the United States and its territories, the songwriter interests of Tiësto and Karol G with respect to DBS. (*Id.*, at ¶ 4.)

36.     Sony was not involved with the creation, recording, marketing or distribution of DBS. (D.E. 19-8, ¶ 4)  It administers, for the United States and its territories, the interests of the Writers with respect to DBS. (*Id.*)

37.     Warner was not involved in the creation, recording, distribution or marketing of DBS. (D.E. 72:7 at ¶ 8). Nor is it involved in exploiting DBS in the United States and has nothing to do with DBS. (*Id.*)

**D.     Musical Comparison of AD and DBS**.

*Plaintiff's Expert*

40.     Viera does not have a degree in musicology. (Ex. F, 17:23-19:25.)

41.     Viera bases his musicology qualifications on the receipt of a "Platinum Album" from the World Salsa Congress that identified him as a "musicologist." (*Id.*, 14:5-10; 18:10-19:25.)

42.     The composition of DBS that Viera compared to AD omitted chord progressions that reflect melodic differences between AD and DBS. (Ex. B, ¶¶ 72, 83, 85; Ex. F, 114:11-115:8.)

43.     When presented with common musical terms and definitions contained within his own report, Viera could not define or explain them. (Ex. F, 197:18-25, 203:25-205:23; Ex. E, p. 6, 8).

44.     When presented with sheet music for "Astras De Nos," a composition containing

notes at issue and also within AD, Viera could not respond to questions about the notes. (Ex. F, 112:19-114:3.)

45. Viera was unable to identify whether AD changes from a major to a minor key. (*Id.*, 175:4-177:17.) Viera did not conduct a prior art search. (*Id.*, 75:7-76:12.) Rather, his conclusion about AD being original was solely based on an "instinct" "granted to [him] by God." (*Id.*)

*Defendant's Expert*

46. Dr. Ferrara is a Professor of Music and Director Emeritus of Music and the Performing Arts at New York University's Steinhardt School.[3] (Ex. B; Declaration of Dr. Ferrara ("Ferrara Dec.") at ¶ 1.)

47. Dr. Ferrara has been qualified to testify as a musicological expert in prior copyright infringement actions. (Ex. B, Appx. A.)

48. As part of his musicological assessment, Dr. Ferrara conducted a prior art search. (Ex. B, ¶ 34-55; Ferrara Dec., ¶¶ 26-30.)

*Differences Between AD and DBS*.

49. The structures in AD and DBS are different. (Ex. B, ¶¶ 4 , 9-11, 13-22, 23-30, 31-33, Ferrara Dec., ¶ 7-9.) AD contains no vocal melody nor lyrics. (Ex. B, ¶10; Ferrara Dec., ¶ 8.) Nor does it have verse, chorus, or bridge sections. (*Id.*) DBS has a vocal melody, lyrics, and a "verse-chorus-bridge structure." (*Id.*)

50. The overall rhythm in AD and DBS are different. (Ex. B, ¶¶ 23-30, Ferrara Dec., ¶ 18.) AD is in 4/4 meter, with several bars in 2/4 meter. (Ex. B, ¶¶ 23-30; Ferrara Dec., ¶ 19.) DBS is exclusively in 4/4 meter. 4/4 meter is ubiquitous in music and is known as "common time."

---

[3] Dr. Ferrara's full qualifications and background are contained within his curriculum vitae, attached as Appendix 1 of the Ferrara Report. (Ex. B, Appx. A.)

(*Id*.)

51.     The tempos are also different: AD is 110 beats per minute, and DBS is faster at 120 beats per minute. (*Id*.)

52.     Despite common use of longstanding musical building blocks that pre-exist AD, detailed in Paragraphs 13 – 16 of Dr. Ferrara's Declaration, the harmony throughout AD is different than DBS.  (Ex. B, ¶ 17-22; Ferrara Dec., ¶ 10.)  AD begins in the key F major, and transitions in parts to D minor.  (Ex. B, ¶ 15; Ferrara Dec., ¶ 11.)  The entirety of DBS is in the key of B minor. (*Id*.)

53.     Further, the chords and chord progressions in five out of the eight harmony bars at issue are different in AD and DBS.  (Ex. B, ¶ 18(a)-(h); Ferrara Dec., ¶ 14.)

***Similarities Between AD and DBS Are Based on Unprotectable Musical Building Blocks***.

54.     Any claimed harmonic or melodic similarities are based on commonplace musical building blocks.  (Ex. B, ¶¶ 20, 31-33; Ferrara Dec., ¶¶ 16, 24.)

55.     These same musical building blocks present in both AD and DBS also appear in at least seven other musical works that pre-date the creation of AD, and at least three other musical works created after the release of AD.  (Ex. B, ¶¶ 34-55; Ferrara Dec., ¶¶ 26-32.)

56.     It is unrebutted that after filtering out the melodic notes and chords present in each of the seven prior art works, there are between four to ten note fragments similar between DBS and AG, depending on the specific prior art.  These fragments do not constitute a coherent melody, and the majority of the bars in question do not share any of the limited and fragmented notes.  (Ex. B, ¶¶ 39, 41, 43, 44, 45, 46 and 47.)  Rather, the melodic similarities between AD and DBS are a function of, and based on, an musical building blocks, which indisputably create no significant melodic similarities between AD and DBS. (*Id*.)

57. Moreover, when combined with Dr. Ferrara's unrebutted findings regarding the differences in structure, harmony, and rhythm, there are no significant structural, harmonic, rhythmic, and/or melodic similarities, individually or in the aggregate, between AD and "DBS. (*Id*., ¶¶ 39, 41, 43, 44, 45, 46, 47 and 56.)

58. Based on Dr. Ferrara's unrebutted analysis of the differences and insignificant similarities between AD and DBS and taking into account the fact that almost all of the claimed similarities are commonplace musical building blocks that appear in prior art, there is no musicological evidence that suggests that DBS was copied from AD. (*Id*.)

Dated:  April 28, 2025

Respectfully Submitted,

**PRYOR CASHMAN LLP**

By: /s/ *James Sammataro*

James G. Sammataro
Florida Bar No. 520292
Donald S. Zakarin (admitted *pro hac vice*)
Benjamin S. Akley (admitted *pro hac vice*)
jsammataro@pryorcashman.com
dzakarin@pryorcashman.com
bakley@pryorcashman.com
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (786) 582-3010